UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM M. KUTIK<br><br>Plaintiff,<br><br>v.<br><br>SHAREDXPERTISE MEDIA, LLC,<br><br>Defendant. | Case No. 3:11-cv-00605-JBA<br><br>January 17, 2012 |

### DEFENDANT SHAREDXPERTISE MEDIA, LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION AND THINGS TO PLAINTIFF WILLIAM KUTIK

Defendant SharedXpertise Media, LLC, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, requests that Plaintiff William Kutik produce the documents, electronically stored information and things identified below, within thirty (30) days of service hereof. The documents, electronically stored information and things requested should be timely produced at the offices of Fox Rothschild LLP, One Landmark Square, 21st Floor, Stamford, Connecticut 06901.

### INSTRUCTIONS

1.      This request for production of documents is continuing in nature and requires supplemental answers if the responding party obtains further information after this request for production of documents has been answered. Demand for supplementation is hereby made.

2.      All responses to this request shall include such material as is in the custody, possession or control of the responding party including material held by employees, agents, attorneys, accountants, or other representatives acting on the parties' behalf.

3.    If any material requested herein is in the possession, custody or control of another, please identify the person having such material in his possession, custody or control.

4.    If any material responsive to these records has been destroyed, please identify the document, the date of destruction and the name of the person who ordered or authorized the destruction.

5.    If you are unable after full inquiry and investigation to produce any of the requested materials, provide such information as you have been able to ascertain and explain the steps taken in attempt to fully respond to the subpoena why a complete response could not be produced.

6.    If any document falls within the scope of this request, but is withheld on the basis of an assertion of the attorney-client privilege, work product doctrine, any other claim of privilege, or if they are otherwise non-discoverable, please:

(a)    Identify its title and general subject matter;

(b)    State its date;

(c)    Identify its author(s);

(d)    Identify the person(s) for whom it was prepared and to whom it was sent;

(e)    State the nature of the privilege(s) and/or the reasons you claim the document is non-discoverable.

7.    Your response shall state, with respect to each item or category of documents or other tangible things requested, that inspection and related activities will be permitted as requested, unless any request is objected to, in which event the reasons for objection shall be stated.

2

STI 35125v1 01/17/12

8.     To the extent you refuses to produce any requested document (as defined herein) on the basis of a claim of privilege, confidentiality or the work-product doctrine, or any other immunity, please state the following with respect to each such document withheld:

a) whether the document presently exists;
b) the date the document was prepared;
c) the type of document (i.e., three-page letter, one-paragraph memorandum);
d) the subject matter and/or title of the document;
e) each person who authored the document and his or her business title or position;
f) all intended recipients of the document;
g) all persons or organizations who have reviewed or at any time possessed the document;
h) the location of the original and all copies of the document; and
i) the nature of and basis for the claim of privilege or immunity . (should be first item above)

9.     If any document, electronically stored information or thing has been misplaced, destroyed, erased or cannot be located, please state the following separately for each such document:

a) the request to which the document is responsive;
b) the date of the document;
c) the type of document (i.e., letter, memorandum, etc.);
d) the subject matter of the document and/or its title;
e) all recipients of the document and the business, legal title or position of each;
f) each person who authored the document and his or her business, legal title or position;
g) the last known location of the document; and
h) the reason the document cannot be produced (i.e., misplaced, destroyed, cannot be located, etc.).
i)

10.     Where anything has been deleted or redacted from any document produced in response to this production request:

a) specify the nature of the material deleted or redacted;
b) specify the reason for the deletion or redaction; and
c) identify the person responsible for the deletion or redaction.

11.     Your refusal to produce any document, or objection to any request(s) does not excuse you from providing timely and complete responses to all other requests set forth herein.

3

12.    If you object to any particular portion of a request, you are required to produce documents in response to any other portion of the request as to which there is no objection.

13.    If you deem the request, or any definition or instruction relevant to the request, to be ambiguous, please identify all matters deemed to be ambiguous and set forth the interpretation adopted in answering the request.  In all instances, the interpretation that results in the most comprehensive answer is the intended interpretation and should be assumed.

14.    Please produce paper or "hard copy" documents and things as they are kept in the ordinary course of business, with appropriate markings or designations so that it may be determined to what request they are intended to be responsive.

15.    All responsive documents must be produced and must include all copies that are not identical to the original.

16.    Please produce electronically stored information "esi" as follows:

(a)    Image/Native/Near-Native Production:   With the exception of spreadsheets, databases, files with embedded hyperlinks and presentation files (e.g. Power Point), please convert electronic files to TIFF format (or paper documents scanned to TIFF format) as follows,

(i)    300 dpi resolution, single-page black and white CCITT Group IV TIFF file format.  For production of TIFF format image files, image keys shall be identical to the unique electronic Bates, Document ID or Control Numbers.  Images shall be identified in a load file by boundaries corresponding to digitized paper documents by the physical and/or logical boundaries most representative of the documents' actual boundaries.

(ii)    Where Native files converted to images or digitized paper documents contain graphical representations in color that cannot otherwise be reasonably

4

understood, all such files shall be converted to color JPG image files and assigned a Bates number as discussed above.

(iii) For purposes of production, responsive email items shall include all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to email or other items). Attachments shall be produced and Bates numbered consecutively subordinate to the "parent" email or other parent items so that the family (parent/child) relationship is maintained. If parent email or other parent items (e.g., calendar, contacts, tasks, notes, etc.) are found and collected outside of email repositories (e.g., items having extensions like .MSG, .HTM, .MHT, etc.), then all such produced items shall include any attachment, maintaining the family (parent/child) relationship. The attachment range shall be included for the parent and children such that the family record will document the Doc ID for the parent and all children. All user-generated, application, and system metadata shall be produced as outlined in Attachment A.

(iv) Structured data (e.g., Oracle, SQL, MySQL, QuickBooks, proprietary timekeeping, accounting, inventory, etc.) shall be produced in text delimited formats (e.g., flat "tables" with field names identified in the first "record," or as fixed-length flat files with appropriate record layout), that is, formats capable of being loaded into MS Access 2007, Concordance, or in reports or views able to accessed and used by such software. Any field-level documentation shall also be provided. Other proprietary database file formats which do not conform to these parameters shall be discussed between the parties before production.

(v) Each converted native file shall have an extracted text file in .txt format named with the DocID of the corresponding file. Each file where the text cannot be

5

extracted shall have a multipage OCR text file named with the DocID of the corresponding file. (e.g. DocID = PREFIX0000123; Filename = PREFIX0000123.txt.)

(vi)    Certain native files shall not be converted to images, namely the following: spreadsheets, databases, and presentations (e.g., Microsoft Excel, Access, PowerPoint), as well as PDF files with embedded hyperlinks, etc. For native files not converted to images, a placeholder TIFF file shall be created and named for the DocID. (e.g. . DocID = PREFIX0000123; Filename = PREFIX0000123.tif.) All such files shall be produced in their native format and a place holder image key inserted in the load file to identify the placeholder TIFF. The extracted text and metadata should be included in the load file and the native file shall then be named by the Doc ID.   (e.g. DocID = PREFIX0000123; Filename = PREFIX0000123.xls for MS Excel document.)

(vii)    Images to which redactions or other annotations were applied during privilege or other document reviews shall be produced with multipage .TXT files, either OCR converted or extracted text, that most closely represents the content of the images after being redacted/annotated, each file named the same as the DocID/Bates number of the corresponding document. (e.g. Image Filename = PREFIX0000123.tif; OCR Filename = PREFIX0000123.txt.)

(viii)    A load file(s) for native/near-native, images, metadata, extracted text and OCR files shall be provided as .DAT files, delimited by the Concordance default format delimiters, e.g., ASCII 020 ( for comma), 254 (þ for quote), and 174 (® for newline). The first line of the .DAT file will contain the Field Names in delimited format. A mapping of fields/field structure shall be provided to plainly identify: names, types, lengths, and

6

formats (e.g., date format) of all fields and also indicate the field name intended to be linked for image viewing (e.g., BEGDOC).

(ix)   Photographs shall be produced as single-page JPG files with a resolution equivalent to the original image as it was captured/created. All JPG files shall be accompanied by a load file as described above.

(x)   Native electronic files that cannot be processed to TIFF format due to processing software limitations shall be enumerated on an "Exception Report" which shall provide the full filename and the pre-processing hash value corresponding to each file. A placeholder TIFF file shall be created and assigned a unique Bates number with a cross reference to the native filename.

(b)   Production Criteria:

(i)   Load files shall identify the corresponding custodians or sources or other specific criteria that identifies sets or subsets of responsive documents;

(ii)   Images produced shall identify where there was redaction or other annotation;

(iii)   Identify what search terms were used and/or culling methods applied and the document review systems implemented;

(iv)   The responder shall also specify via a "Privilege Log" all ESI for which there is a claim of privilege or confidentiality and thus is not being produced — along with this basis for such claim.

(c)   Deduplication: The responding party must produce a cross reference file documenting the custodian and location of all documents removed during the deduplication process.

7

(d)    Production of Extracted or OCR Converted Text and Image files: Volume folders shall be named to 30 or less characters for the date and custodian or source on which ESI converted-to-images or digitized ("scanned") images are produced will be the top level folder. Sub-folders containing images shall be saved with 1,000 images but documents shall not be broken across volume or sub-folders. Sub-folders will be serialized according to an 8 character sequential numbering scheme, starting with a subfolder name of 00000001, to be saved under the volume folder, e.g., \DOE_JOHN_20100101\00000001\.

(e)    Images from which Text Cannot be OCR Converted: When due to limitations of paper digitization software/hardware limitations or attributes conversion of OCR text is not possible, these image files shall be listed on an exceptions report to include the electronic bates, Document ID or control number(s) corresponding to image files that are not able to be OCR converted.

(f)    Production of ESI Relative to Uncommon File Types: ESI shall be produced in a manner which is functionally useable. However, production of uncommon file types shall be the subject of further discussion and agreement between the parties before production. The following are examples:

(i)    AutoCAD data, e.g., .DWG, .DXF, shall be processed/converted and produced as single-page .JPG image files and accompanied by a load file as described in the "Production of images converted from ESI or digitized from paper" section. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.

(ii)    GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.

8

(iii)    Audio and video recordings, shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

(g)    Production of Instant Messenger ("IM"), Voicemail Data, etc:   The responding party is required to identify and collect any and all data which is responsive to the requirements and substantive materials demanded herein which may be stored in cell phone/PDA/Blackberry/smart phone data, voicemail messaging data, instant messaging, text messaging, conference call data and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, may be the subject of discussion and agreement between the parties before production.

(h)    ESI Production from Non-PC/Windows systems:  Production of ESI from non-PC or Windows based systems (e.g., Apple, IBM, UNIX, etc.) shall be the subject of further discussion and agreement between the parties before production.

(i)    Media Formats for Storage and Delivery of Production Data:

Storage media used to provide the ESI shall be appropriate to the size of data in the production.  Acceptable media include the following:

(1)    CD-ROMs and DVD-Rs (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications

(2)    External hard drives: eSata is preferred, USB 2.0, Windows compatible

(j)    Virus Protection and Password Protection:   Production data shall be free of computer viruses.  Any files found to include a virus shall be quarantined by the producing party and noted in an exception log provided with the production.  Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption

9

instructions. Any software required for decryption shall be the subject of discussion and agreement between the parties before production.

(k)    Privilege Logs:

(i)    The content and format of Privilege Log(s) must be discussed by the parties prior to the production of data.

(ii)    The recommended formats for producing Privilege Logs are MS Excel or MS Access. All documents determined to be privileged by the producing party shall be identified in a manner agreed upon by the parties

(l)    Compliance to Generally Accepted Technical Standards: Generally, productions should conform to standards and practices established by the National Institute of Standards and Technology ("NIST"), U.S. National Archives & Records Administration ("NARA"), International Organization for Standardization ("ISO"), and/or other US Government or professional organizations.

(m)    A transmittal letter shall accompany the production and shall provide the following information:

(i)    Bates number (Document ID or control number) ranges referenced to custodian names;

(ii)    Volume name (e.g., name of custodian or production date);

(iii)    Total number of records;

(iv)    Total number of images/pages and/or files;

(v)    Field structure map to plainly identify field names, types, lengths, formats and indicate the field name to be linked to for image viewing;

10

(vi)     Date and time format (e.g., YYYYMMDD) and time zone applied to ESI processing;

(vii)    Confirmation that the number of records in load files is equal to the number of files produced;

(viii)   Identification of any and all production anomalies by Bates number (Document ID or control number) in an exception log; and the request/demand date and provisions for which the produced data is responsive shall be identified by Bates number (Document ID or control number) ranges of the files responsive to each request/demand.

11

## DEFINITIONS AND RULES OF CONSTRUCTION

1.       The definitions and instructions set forth in Local Civil Rule 26 are hereby incorporated as if fully set forth herein.

2.       As used in this request, "Plaintiff" "you" or "Kutik" means Plaintiff William Kutik, and his agents, attorneys, directors, employees, officers, predecessors in interest, affiliates, and successors, representatives, and any other person who acts or has acted on their behalf.

3.       As used in this request, "Defendant," and "SharedXpertise" mean the Defendant, SharedXpertise Media LLC, its agents, attorneys, directors, employees, officers, directors, subsidiaries, parents, and any other person or entity who acts or has acted on its behalf.

4.       As used in this request, "LRP" means LRP Publications, Inc., and its agents, attorneys, directors, employees, officers, predecessors in interest, affiliates, and successors, representatives, and any other person who acts or has acted on their behalf.

5.       As used in this request, "HR Technology Conference & Exposition" means the HR Technology Conference & Exposition referenced in paragraph 7 of the Complaint

6.       As used in this request, "Proskauer" means Proskauer Rose LLP, and its agents, attorneys, directors, employees, officers, predecessors in interest, affiliates, and successors, representatives, and any other person who acts or has acted on their behalf.

7.       As used in this request, "Cohen & Wolf " means Cohen & Wolf, P.C., and its agents, attorneys, directors, employees, officers, predecessors in interest, affiliates, and successors, representatives, and any other person who acts or has acted on their behalf.

8.       As used in this request, "The April Fool's Mock Press Release" means any form of the mock press release dated April 1, 2011 that is the subject of this Action including in the form it was originally posted, with the added "sunburst" announcing April Fool's, and in email.

9.     As used in this request, "person or persons" means an individual, company, partnership, corporation, association, or any governmental agency, department or unit, and the elected and appointed officials, officers, directors, managers, employees, attorneys, and agents thereof.  A request to "identify" a company, partnership, corporation, association, or any governmental agency, department or unit shall require the identification of its:  1) full name and type of organization or entity; 2) address of principal place of business; and 3) jurisdiction and date of incorporation or organization.

10.    As used in this request, "Action" means the above-captioned matter.

11.    As used in this request, "Complaint" means the Complaint filed by Kutik in the Action.

12.    The terms "document", "electronically stored information" and "thing" have the broadest meanings ascribed by the Federal Rules of Civil Procedure.  The term "thing" includes every kind of physical specimen or tangible item, other than a document or electronically stored information, in the possession, custody or control of Defendant.  Every request for documents and/or electronically stored information herein shall be deemed to be a request for any thing within the subject matter of the request.  "Document", "electronically stored information" and "thing" include information in all tangible forms and electronic media in which information is stored and includes all written or graphic matter of every kind and description, however produced or reproduced, WHETHER DRAFT OR FINAL, original or reproduction, (including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations and media from which information can be obtained and translated, if necessary, by the Responding Party through electronic devices into reasonably usable form).  They include, but are not limited to, letters; emails; correspondence; memoranda; notes; transcripts; contracts; agreements;

13

licenses; applications; memoranda of telephone conversations or personal conversations; minutes of meetings; interoffice communications; reports; financial statements; ledgers; books of account; proposals; prospectuses; offers; orders; receipts; working papers; desk calendars; appointment books; diaries; time sheets; logs; recordings or materials similar to any of the foregoing; however denominated; and including writing; drawings; graphs; photographs; charts; invoices; diaries; oral conversations; meetings; reports of telephone conversations; all video and audio recordings; microfilm; microfiche; computer discs, including floppy discs and hard drives; CD-Rom; computer printout or tape; data processing results; printouts and computations, (both in existence and stored in memory components), and other compilations from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form. The terms "document", "electronically stored information" and "thing" also include all copies of material containing any additional writing, addenda, modifications, underlining, notes, deletions, other markings or notations, or are otherwise not identical copies of the original whether actually or constructively possessed. Also included are any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software); any electronic files saved as backup; any "deleted" but recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from random access memory [RAM] on a hard drive during the normal operation of a computer [file slack and or RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data).

STI 35125v1 01/17/12

13.     The word "any" shall be construed to include the word "all" and the word "all" shall be construed to include the word "any." The word "including" shall mean "including but not limited to."

14.     Words used in the singular shall be deemed to include the plural and vice versa. Furthermore, whenever a question is framed in the conjunctive, it shall be construed to include the disjunctive and vice versa. Finally, "all" shall be deemed to refer to "any" and "each," and vice versa.

15.     As used in this request the word "archive" means a long-term storage area, often on magnetic tape, for backup copies of files or for files no longer in active use; or the act of copying files to long-term storage medium for backup. An archive copy is typically maintained for historical reference.

16.     As used in this request the word "backup" means a snapshot of data at a specific point in time, typically stored on tape or disk.

17.     As used in this request the word "computer" means any programmable machine, including, but not limited to, network servers, desktops, laptops, notebook computers, employees' home computers, mainframes, the PDAs of the Responding Party and its employees (personal digital assistants, such as PalmPilot, Blackberry, Cassiopeia, HP Jornada and other such handheld computing devices), digital cell phones and pagers.

18.     As used in this request the word "data" means distinct pieces of information formulated in a special way for reading, storage or access on a computer.

19.     As used in this request the word "hard drive" means the mechanism that reads and writes data on a hard disk. A hard drive is the primary hardware that a computer uses to store information, typically magnetized media on rotating disks.

15

## REQUESTS FOR DOCUMENTS, ELECTRONICALLY STORED INFORMATION AND THINGS

1.      All documents, electronically stored information and things that constitute, reflect, refer to, or mention any harm or damage, or any absence of harm or damage, suffered by Kutik as a result of the April Fool's Mock Press Release.

2.      All documents, electronically stored information and things that constitute, reflect, refer to, or mention any contract or other arrangement between Kutik and LRP covering the years 2009, 2010 or 2011.

3.      All documents, electronically stored information and things that constitute, reflect, refer to, mention or identify the attendees, speakers, sponsors, exhibitors, or vendors, or the number of attendees, speakers, sponsors, exhibitors, or vendors, at the HR Technology Conference & Exposition in any of the years 2009, 2010 or 2011.

4.      All documents, electronically stored information and things that constitute, reflect, refer to, mention or identify persons solicited to participate in any way (whether as attendee, speaker, sponsor, exhibitor, vendors or in any other capacity) in the HR Technology Conference & Exposition in any of the years 2009, 2010 or 2011.

5.      All documents, electronically stored information and things that constitute, reflect, refer to, mention or identify any advertising, promotional or marketing material used to promote the HR Technology Conference & Exposition in any of the years 2009, 2010 or 2011.

6.      One copy of each conference brochure or flyer distributed during or in advance of the HR Technology Conference & Exposition in the years 2009, 2010 and 2011

7.      All documents, electronically stored information and things that constitute, reflect, refer to, mention or identify the amount of money earned by the HR Technology Conference & Exposition in any of the years 2009, 2010 or 2011.

16

8.     All documents, electronically stored information and things that constitute, reflect, refer to, mention or identify the amount of money spent to market, advertise or otherwise promote the HR Technology Conference & Exposition in any of the years 2009, 2010 or 2011.

9.     All documents, electronically stored information and things that constitute, reflect, refer to, mention or identify any expenses associated with the HR Technology Conference & Exposition in any of the years 2009, 2010 or 2011.

10.     All documents, electronically stored information and things that constitute, reflect, refer to, mention or identify the amount of money earned by Kutik from the HR Technology Conference & Exposition in any of the years 2009, 2010 or 2011.

11.     All documents, electronically stored information and things that constitute, reflect, refer to, or mention any contract or other arrangement pursuant to which Kutik earned any income or other compensation in any of the years 2009, 2010 or 2011.

12.     All documents, electronically stored information and things that constitute, reflect, refer to, or mention any contract or other arrangement entered into by Kutik on or after April 1, 1011 pursuant to which Kutik has earned or will earn any income or other compensation.

13.     All documents, electronically stored information and things that constitute, reflect, refer to, mention or identify the amount of money earned by Kutik in any of the years 2009, 2010 or 2011, or the reasons for any change or the absence of such change in amounts earned.

14.     Kutik's federal and state income tax returns for the years 2009-2011.

15.     All social media communications to or from Kutik from March 25, 2011 through the date of your response including, but not limited to all: blog posts, "Tweets", Facebook postings, and LinkedIn postings.

17

16.    Recordings of all episodes of *The Bill Kutik Radio Show* from March 25, 2011 through the date of your response.

17.    Recordings of all episodes of *Firing Line with Bill Kutik* from March 25, 2011 through the date of your response.

18.    All documents, electronically stored information and things that constitute, reflect, refer to, or mention any communication between Kutik and any person or entity concerning the April Fool's Mock Press Release.

19.    All documents, electronically stored information and things that constitute, reflect, refer to, or mention any communication between Kutik any person during the period April 1, 2011 through April 8, 2011.

20.    All documents, electronically stored information and things that constitute, reflect, refer to, or mention any communication between Kutik and SharedXpertise or any person associated with SharedXpertise, including but not limited to Elliot Clark.

21.    All documents, electronically stored information and things that constitute, reflect, refer to, or mention any communication between Kutik any other person concerning SharedXpertise or any person associated with SharedXpertise, or SharedXpertise's HR Demo Show HR Today Forum or HRO Today Magazine, during the period April 1, **2010** through the date of your response.

22.    All documents, electronically stored information and things that constitute, reflect, refer to, or mention any communication from Kutik to any person requesting or demanding that such person not participate in SharedXpertise's HR Demo Show or HR Today Forum.

23.   All documents, electronically stored information and things that constitute, reflect, refer to, or mention any communication between Kutik and LRP or any of its owners, employees, attorneys or persons acting on its behalf concerning the any aspect of this Action, including but not limited to any discussion of whether to bring this Action.

24.   All documents, electronically stored information and things that constitute, reflect, refer to, or mention any communication between Kutik and any person or entity concerning the manner attorneys' fees incurred in prosecuting this action have been paid or are to be paid, including any identification of the person or entity that has paid or will pay such fees.

25.   All documents, electronically stored information and things that constitute, reflect, refer to, or mention any arrangement between Kutik and any person or entity concerning any indemnity given to Kutik for any monetary award against him in this Action or any subsequent Action that may be brought against him by SharedXpertise.

26.   All documents, electronically stored information and things that constitute, reflect, refer to, or mention any communication between Kutik and Cohen & Wolf prior to the filing of this Action.

27.   All documents, electronically stored information and things that constitute, reflect, refer to, or mention any communication between Kutik and Proskauer.

19

STI 35125v1 01/17/12

Dated: Stamford, Connecticut
January 17, 2012

FOX ROTHSCHILD LLP

By: _____
Eric C. Osterberg (ct22679)
One Landmark Square
21st Floor
Stamford, CT  06901
Tel: (203) 425-9500
Fax: (203) 425-9595
eosterberg@foxrothschild.com
*Attorneys for SharedXpertise Media, LLC*

20

## CERTIFICATE OF SERVICE

I certify that on January 17, 2012, I sent a copy of the foregoing by email to the following

counsel of record for Plaintiff William Kutik:

> Stewart Edelstein, Esq.
> Cohen & Wolf, P.C.
> 1115 Broad Street
> Bridgeport, CT 06604
> sedelstein@cohenandwolf.com

> Jenifer deWolf Paine, Esq.
> Proskauer Rose LLP
> Eleven Times Square
> (Eighth Avenue & 41st Street)
> New York, NY 10036-8299
> jpaine@proskauer.com

_____
Eric C. Osterberg

ST1 35125v1 01/17/12