# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| WILLIAM M. KUTIK | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 3:11-CV-00605-JBA |
| | : | |
| v. | : | |
| | : | |
| SHAREDXPERTISE MEDIA, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR AN "ATTORNEYS' EYES ONLY" PROTECTIVE ORDER

COHEN AND WOLF, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06601
Telephone: (203) 337-4144
Facsimile: (203) 394-9901

*Of Counsel:*

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

## PRELIMINARY STATEMENT

Plaintiff William M. Kutik ("Mr. Kutik") is a consultant to LRP Publications, Inc. ("LRP").  Since its inception almost 15 years ago, Mr. Kutik has been the Co-Chair and programmer of LRP's annual HR Technology Conference & Exposition ("LRP's Expo"), which is the world's largest human resources conference focused on technology.[1]  A portion of Mr. Kutik's compensation under his consulting agreement with LRP is based on the gross revenue LRP receives from vendors and attendees at LRP's Expo.[2] Defendant's false press release, which it posted on its website and sent by e-mail to more than 33,000 people on April 1, 2011, falsely stated that Defendant had acquired LRP's Expo and that Mr. Kutik would be leaving the industry.[3]  The false press release also advertised Defendant's conference in May 2011.[4]

Mr. Kutik's document requests and interrogatories at issue in Defendant's Motion for an "Attorneys' Eyes Only Protective Order" ("Defendant's Motion") are narrowly tailored to the central question whether potential vendors and attendees of LRP's Expo in October 2011 chose to participate in Defendant's conference in May 2011 and not participate in LRP's Expo as a result of the false press release, causing damage to Mr. Kutik.

This Court's Standing Protective Order, which limits the use of confidential information solely for this litigation, is sufficient to protect – from disclosure to the public or use by Mr. Kutik for any other purpose – the discovery materials Mr. Kutik seeks, *i.e.*, the identity of (1) the people to whom Defendant disseminated the false press

---

[1] Declaration of William M. Kutik in Opposition to Defendant's Motion for an "Attorneys' Eyes Only" Protective Order, dated March 27, 2012 ("Kutik Decl.") ¶ 4 (filed contemporaneously herewith).
[2] Kutik Decl. ¶ 4.
[3] Compl. ¶¶ 9-13.
[4] *Id.* at ¶ 9.

release; (2) new customers, including conference vendors and attendees, Defendant obtained between the date of the press release and the date of LRP's Expo that Mr. Kutik co-chairs; (3) registrants of any conference Defendant produced between the date of the press release and May 24, 2011 (the date of Defendant's conference); and (4) people who registered for Defendant's conferences in the two weeks following the press release.  In its Motion, Defendant summarizes this limited information as "customer lists" and "mailing lists" or "prospect lists" and argues that all of it qualifies as trade secrets.

An attorneys' eyes only protective order is not warranted because the limited information and documents requested by Mr. Kutik are not confidential "trade secrets" and such an order would inappropriately restrict Mr. Kutik's pursuit of this action because it would unduly impair his ability to establish damages and develop and implement his litigation strategy.

## ARGUMENT

I. **An Attorneys' Eyes Only Protective Order Would Unduly Impair Mr. Kutik's Ability To Establish Damages and Develop and Implement His Litigation Strategy**

An attorneys' eyes only protective order would prevent Mr. Kutik from determining the extent of his damages based on his specialized knowledge of the human resources and human resources technology industries and the vendors and attendees therein.  Mr. Kutik needs to review discovery materials produced by Defendant to determine, *inter alia*, his damages from LRP's Expo's loss of revenue-generating vendors and attendees because a portion of Mr. Kutik's compensation is based on the gross revenue that LRP receives from vendors and attendees at LRP's Expo.[5]  Mr. Kutik is the Conference Co-Chair and programmer of LRP's Expo and has been since its inception

---

[5] Kutik Decl. ¶¶ 4-5.

nearly 15 years ago.[6]  As such, Mr. Kutik – not his counsel – has the ability to determine

which customers on Defendant's lists are material for purposes of evaluating and

establishing his claims and damages caused by Defendant's wrongful acts.[7]

Defendant is incorrect that Mr. Kutik's counsel can simply match lists to

determine his damages.  Mr. Kutik has spent the last 22 years working within the human

resources technology industry and the last 15 years programming and serving as the

Conference Co-Chair for LRP's Expo, which has given him unique knowledge of the

participants in the human resources technology industry.[8]  Mr. Kutik needs to review the

requested discovery materials to determine whether there are vendors and attendees on

the lists whom he would have expected to attend LRP's Expo in 2011, but did not do so.[9]

With more than 33,000 names on the e-mail list, it is essential for Mr. Kutik to review

discovery materials produced by Defendant to evaluate and establish the extent to which

Defendant's wrongful acts have resulted in damages to Mr. Kutik, primarily from loss of

revenue-generating vendors and attendees who did not participate in LRP's Expo in

2011.  Mr. Kutik – not his counsel – has the ability to scan the requested discovery

materials and identify whether there are vendors and attendees on the lists whom he

would have expected to attend or exhibit at LRP's Expo in 2011, but did not do so.[10]

Defendant also argues that an attorneys' eyes only disclosure would not inhibit

Mr. Kutik's ability to develop his litigation strategy.  This is not true.  Mr. Kutik's use of

his extensive knowledge of the human resources technology industry in reviewing the

requested discovery materials is critical to his ability to develop his litigation strategy

---

[6] *Id.* at ¶ 4.
[7] *Id.* at ¶ 5.
[8] *Id.* at ¶¶ 4-5.
[9] *Id.* at ¶ 5.
[10] *Id.*

with counsel.[11]  Mr. Kutik's counsel cannot determine which vendors and attendees who received the false press release, participated in Defendant's conference and did not participate in LRP's Expo should be witnesses for deposition and trial purposes without consulting with Mr. Kutik regarding the appropriateness of interviewing or taking depositions of those vendors and attendees.[12]  Additionally, Mr. Kutik needs to be involved with reaching out to these potential witnesses so as not to disrupt his and LRP's sensitive relationships with current or prospective vendors and attendees of LRP's Expo.[13]

       Any concern that Defendant has regarding protection of the limited information and documents Mr. Kutik has requested is addressed by limiting the use of such information and documents strictly to this litigation, as is provided by this Court's Standing Protective Order.  In *Goehler v. Wood*, the court denied an attorneys' eyes only protective order and allowed the plaintiff, as a party necessarily involved in the litigation, to review the produced information under a standard protective order restricting use of the information solely for that litigation.  162 F.R.D. 691 (D. Utah 1995).  The court held that "[b]ecause the protective order limits disclosure of confidential material to those who are necessarily involved in the case, and these parties may use this information only for purposes of litigating this case, excluding any business purpose, the court concludes [Defendant's] confidentiality concerns have been addressed adequately."  *Id.* at 697; *accord Struthers Scientific & Int'l Corp. v. Gen. Foods Corp.*, 45 F.R.D. 375, 378 (S.D. Tex. 1968) (instructing the parties to jointly draft and submit a standard protective order "providing that any trade secrets obtained by either side in the course of discovery will be

---

[11] *Id.* at ¶ 6.
[12] *Id.*
[13] *Id.*

4

utilized only for the purposes of this litigation and will be revealed only during judicial

proceedings").

## II.      The Requested Discovery Materials Do Not Constitute Confidential "Trade Secrets."

"As with most evidentiary and discovery privileges recognized by law, 'there is

no absolute privilege for trade secrets and similar confidential information.'" *In re*

*Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 323 (D.

Conn. 2009) (quoting *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979)).

Thus, Defendant has the burden of proving that the documents sought are trade secrets

and that an attorneys' eyes only protective order is warranted on a good cause basis, and

must "demonstrate that disclosure will work a clearly defined and very serious injury."

*Uniroyal Chem. Co. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 56 (D. Conn. 2004).  This

burden is not satisfied by Defendant's "[b]road allegations of harm, unsubstantiated by

specific examples or articulated reasoning . . . ." *Id.*

Mr. Kutik is amenable to treating the requested information and documents as

confidential under this Court's Standing Protective Order.  However, they are by no

means trade secrets deserving of heightened confidentiality protection.  Defendant has

failed to meet its burden to establish that the requested information and documents

deserve an attorneys' eyes only protective order, because it has not demonstrated that its

lists "constitute trade secrets and disclosing such information would be harmful." *Gohler*

*v. Wood*, 162 F.R.D. 691, 693 (D. Utah 1995) (citing *Centurion Indus., Inc. v. Warren*

*Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981)).

For a list of customer information to merit "trade secrets" protection, it must

"consist of customers whose 'trade and patronage have been secured by years of business

effort and advertising and the expenditure of time and money . . . .'" *Republic Sys. & Programming, Inc. v. Computer Assistance, Inc.*, 322 F. Supp. 619, 627 (D. Conn. 1970) (citing *Town & Country House & Homes Serv., Inc. v. Evans*, 150 Conn. 314, 319 (1963)); *accord Softchoice Corp. v. MacKenzie*, 636 F. Supp. 2d 927, 939 (D. Neb. 2009) (denying special protection for a list of customer information that could essentially be put together from the phone book).  Mr. Kutik's discovery requests do not simply seek a list of all of Defendant's customers.  Rather, the requests seek only new customers and registrants during certain limited periods of time following Defendant's wrongful dissemination of the false press release, and the list of individuals to whom Defendant disseminated the e-mails at the heart of this case.  This mailing list includes more than 33,000 people – thus it is certainly not limited to Defendant's active customers.

Mr. Elliot Clark's declaration does not establish that the requested discovery materials deserve heightened protection.  He makes his declaration about Defendant's "customer and mailing lists" without distinguishing between the two, and does not address the limited nature of Mr. Kutik's requests with regard to actual customer lists (*i.e.*, new customers and registrants during certain defined time periods).[14]  Mr. Clark's broad focus on Defendant's entire "customer and mailing lists" without distinction ignores Mr. Kutik's specific discovery requests tailored to gather information at the heart of this action – the people to whom the press release was sent, and certain new customers and conference registrants of Defendant during limited periods of time relevant to the press release and do not request a list of all of Defendant's customers.

Defendant's reliance on *Gaymar Industries, Inc. v. Cloud Nine, LLC*, for the proposition that its customer information should only be viewed by counsel or retained

---

[14] *See* Clark Decl. ¶¶ 8, 15-16.

experts is unavailing because the *Gaymar* court issued an attorneys' eyes only protective order where the discovery request called for all of the opposing party's technical, financial and customer information.  2007 WL 582948, *2-3 (D. Utah Feb. 20, 2007). Here, Mr. Kutik's discovery requests do not seek all of Defendant's customer information as in *Gaymar*.

Even if Mr. Kutik had requested production of Defendant's entire "customer and mailing lists," Mr. Clark has not established that they would deserve heightened protection.  Even when great expense and effort are used to cultivate and protect customer information, "[t]here is no trade secret [when] the customers' names can readily be ascertained through ordinary business channels or reference resources."  *Robert S. Weiss & Assocs. v. Wiederlight*, 208 Conn. 525, 538 (1988) (citing *Town & Country House & Homes Serv., Inc. v. Evans*, 150 Conn. 314, 319 (1963)).  Defendant's "customer and mailing lists" are not proprietary trade secrets because competitors and others already have access to many of the customers' identities.[15]

Defendant's own website, company practices and industry practices belie Mr. Clark's claim that Defendant closely guards its lists of customer information.  Mr. Clark has admitted that Defendant provides conference attendees with an attendance list containing the names of conference attendees.[16]  Defendant prominently displays the names of its sponsors and providers on its website.[17]  In the human resources industry, a list of attendees at conferences and exhibitions is typically handed out to sponsors and

---

[15] Kutik Decl. ¶ 7.
[16] *See* Clark Decl. ¶ 12.
[17] *Id.* at ¶ 11; s*ee also* Affidavit of Stewart I. Edelstein ("Edelstein Aff.") (filed contemporaneously herewith), **Exhibit A** (List of sponsors for SharedXpertise's 2012 HRO Today Forum); Edelstein Aff., **Exhibit B** (SharedXpertise's HRO Today Resource Guide listing HRO Today's featured providers).

vendors.[18]  Defendant also allows any member of the public to access and contact a whole host of human resource providers on its website.[19]

Defendant's reliance on *Republic Systems & Programming, Inc. v. Computer Assistance, Inc.* for the proposition that its "customer and mailing lists" were the product of great expense and effort is unavailing because the court found that the customer information lists *did not* qualify as proprietary trade secrets.  322 F. Supp. 619, 628 (D. Conn. 1970).  "Many of the clients were openly listed in plaintiff's advertising brochures as 'representative clients.'  Others were those seeking bids from not only the plaintiff but also from the plaintiff's competitors."  *Id.*  Similarly, Defendant openly lists the names of its customers in its conference attendance lists and displays its sponsors' names on its website.  Further, there are a finite number of revenue-generating clients in the human resources and human resources technology industries; thus, competitors like Defendant and LRP have access to and compete for the business of many of the same customers.[20] Therefore, the limited information and documents requested by Mr. Kutik – and even Defendant's entire "customer and mailing lists" – do not qualify as proprietary trade secrets.  *See Republic Sys.*, 322 F. Supp. at 627-28.

## CONCLUSION

This Court's Standing Protective Order, which protects information designated as confidential from disclosure to the public and limits the use of such information solely for the current litigation, is sufficient to protect Defendant's confidentiality concerns relating to the limited information Mr. Kutik has requested.  Mr. Kutik has specialized knowledge

---

[18] Kutik Decl. ¶ 8.
[19] *See* Edlestein Aff., **Exhibit C** (SharedXpertise's HRO Today Resource Guide providing a searchable database of HRO Today's providers).
[20] Kutik Decl. ¶ 7.

that his attorneys do not have that is needed to evaluate the information.  Prohibiting Mr.
Kutik from reviewing that information would unjustifiably impair his ability to establish
the damages flowing from Defendant's wrongful acts and to develop and implement his
litigation strategy.  Therefore, Mr. Kutik respectfully requests that this Court deny
Defendant's emergency motion for an attorneys' eyes only protective order.


Dated: March 27, 2012                    Respectfully submitted:


                                         COHEN AND WOLF, P.C.

                                         /s/ Stewart I. Edelstein
                                         Stewart I. Edelstein (ct06021)
                                         sedelstein@cohenandwolf.com
                                         1115 Broad Street
                                         P.O. Box 1821
                                         Bridgeport, CT 06601
                                         Telephone: (203) 337-4144
                                         Facsimile: (203) 394-9901

                                         *Attorneys for Plaintiff William M. Kutik*

*Of Counsel:*

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

## CERTIFICATION OF SERVICE

I hereby certify that on March 27, 2012, a copy of the foregoing was filed electronically.

Notice of the foregoing filing and this Certification of Service will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to any parties who are unable to accept electronic filing.

Parties may access the foregoing filings and this Certification of Service through the Court's system.

/s/ Stewart I. Edelstein
Stewart I. Edelstein
