UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM M. KUTIK<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SHAREDXPERTISE MEDIA, LLC,<br><br>　　　　Defendant. | Case No. 3:11-cv-00605-JBA<br><br><br><br>March 9, 2012 |

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT'S COUNSEL, FOX ROTHSCHILD, LLP**

Defendant SharedXpertise Media, LLC ("SharedXpertise") respectfully submits this Memorandum of Law in support of its opposition to the motion by plaintiff William M. Kutik ("Kutik") to disqualify SharedXpertise's counsel, Fox Rothschild LLP.

## I.　INTRODUCTION

Motions to disqualify counsel are not favored in the Second Circuit because they seek to deny a party's choice of counsel and because such motions are so often brought for tactical reasons. As a result, Kutik bears a "heavy" burden of proof in order to prevail. He must establish (1) that he was previously a "client" of Fox Rothschild and (2) that it is "patently clear" that the prior litigation involving him as a client is "identical or essentially the same" as the current litigation.

Plaintiff Kutik has failed to meet his "heavy burden" of proof for two reasons. First, Kutik was never at any time a client of, or represented by, Fox Rothschild. What is more, Fox Rothschild never even dealt with him in the prior litigation, and his name was never referenced in pleadings or correspondence. To call Kutik a "vicarious client" as a result of a prior litigation

1

that had nothing to do with him is legally and factually frivolous. That fact ends any further inquiry, and his motion should be denied.

Second, even if Kutik previously was a so-called "vicarious client" of Fox Rothschild, plaintiff Kutik has failed to prove that it is "patently clear" that the prior matter is "substantially related" to the current lawsuit. To the contrary, in his own papers, Kutik admits that the two matters are "not identical or essentially the same" – tracking verbatim what he must prove to prevail. See Kutik Br. at 15.

This admission is undeniable. There is nothing similar between a prior employment discrimination case under Title VII of the Civil Rights Act of 1964 arising out of actions taking place in 2006 and before, on one hand, and the current lawsuit alleging claims of unfair competition, violations of the right of publicity and violation of the Connecticut Unfair Trade Practices Act arising out of an allegedly false mock press release issued in 2011.

Kutik stresses that Fox Rothschild dealt with Rebecca McKenna in the prior employment discrimination litigation and that she is a witness in this litigation. But that does not magically make the prior litigation substantially related to this one. Her role in the prior litigation concerned the plaintiff's work for LRP's magazine, which is not the focus of this litigation. Meanwhile, Ms. McKenna's oversight over LRP's conference, which Kutik led and which is at issue in this litigation, was not relevant in the prior litigation. Thus, the issues in both litigations remain completely distinct, and there is no reason that any confidential information in the prior information is relevant or useful to the current litigation. To be sure, there is no evidence that Fox Rothschild gained knowledge of anything to do with Kutik in the prior litigation.

In any event, Fox Rothschild has, out of an abundance of caution, implemented an ethical screen to ensure that lawyers involved in the current litigation have no access to any information

or documents created in connection with the prior litigation.

Accordingly, SharedXpertise respectfully asks this Court deny Kutik's motion to disqualify Fox Rothschild LLP.

## II.     RELEVANT FACTS

### A.     The Instant Lawsuit filed by Kutik

On April 15, 2011, Kutik commenced this action against SharedXpertise, alleging that the issuance of an April Fool's Day mock press release by SharedXpertise caused harm to Kutik's professional reputation and violated 15 U.S.C. § 1125(a), the common law right of publicity and the Connecticut Unfair Trade Practices Act ("CUTPA").  (Dkt # 1.)

The mock press release stated that defendant SharedXpertise had acquired LRP Publications, Inc. ("LRP").  Non-party LRP and defendant SharedXpertise are competitors in the human resources industry who both publish trade publications and conduct conferences.  The mock press release also stated that Kutik, an independent consultant for LRP, would no longer chair a conference run by LRP so that he could "focus on his new business managing a clinic for sensitivity training and smoking cessation in the Catskill Mountain region in New York.  Just a few hours later, defendant SharedXpertise sent an announcement that the press release was an "April Fool's joke."

Plaintiff Kutik alleges that these statements were false, but has not identified anyone who thought the press release was anything other than a joke.  There is no evidence that Kutik has suffered any harm as  result of the press release.  Plaintiff's lack of damages is a central issue in the case.

Subsequently, Fox Rothschild entered its appearance on behalf of the defendant and filed a motion seeking transfer of the lawsuit to the United States District Court for the District of New

Jersey to be consolidated with a separate lawsuit brought by LRP against SharedXpertise in Florida. When the Florida court declined to transfer LRP's lawsuit to New Jersey, defendant SharedXpertise withdrew its motion to transfer the instant lawsuit.

Nearly one year later after the filing of the lawsuit, Kutik filed the instant motion seeking disqualification of SharedXpertise's counsel, Fox Rothschild LLP.

### B.   Fox Rothschild's Prior Representation of Non-party LRP Publications, Inc.

In April 2008, Patricia O'Donnell, a former sales representative for LRP, brought a lawsuit in the United States District Court for the Eastern District of Pennsylvania alleging that despite positive reviews of her performance, defendant LRP terminated her "without warning" and replaced her with a male having "less experience and qualifications." See Declaration of Steven K. Ludwig, ¶¶ 2-3 and Exhibit B thereto. Later in April 2008, Steven K. Ludwig and Erin Fitzgerald of Fox Rothschild entered their appearance on behalf of defendant LRP. See Declaration of Steven K. Ludwig, Exhibit A thereto.

The focus of that litigation related to plaintiff O'Donnell's performance in selling pages in Human Resources Executive ("HRE") Magazine during 2005, 2006 and the first quarter of 2007. Id., ¶ 7. The only issues were why plaintiff O'Donnell was terminated from employment in early February 2007 and whether she was owed wages under Pennsylvania law and, if so, whether she was entitled to compensatory and punitive damages. Id. Information Mr. Ludwig and Fox Rothschild received from LRP Publications, Inc. related to the sale of magazine pages and the marketing of the HRE Magazine between 2004 and 2007 by sales representatives. Id., ¶¶ 7-8.

While Rebecca McKenna was one of many people deposed in the case and was Mr. Ludwig's primary liaison, his interactions with Ms. McKenna focused on the time period from late 2004 to early 2007 and on sales of pages in Human Resources Executive Magazine. Id., ¶

11.

Plaintiff Kutik was not a client of Fox Rothschild's in that litigation (or in any other matter). Id., ¶ 6. Kutik's name was not mentioned during discovery in that case, and Mr. Ludwig never communicated with him. Id., ¶¶ 6, 9.

The litigation did not involve or pertain to the sales, revenues, profits, finances, marketing or attendance at the HR Technology conference. Id., ¶ 8. The only specific reference to any HR Technology conference pertained to an allegation that O'Donnell's supervisor had uttered an expletive to his sales team at a conference attended by all of the sales representatives. Id., ¶ 7.

SharedXpertise was not referenced in any of the depositions or in the pleadings. Id.

The lawsuit settled shortly before trial, and the case was dismissed with prejudice on May 5, 2010. Id., ¶ 10. Since then, Fox Rothschild has not represented LRP in any matter. Id. As the summer of 2010, LRP became a former client of Fox Rothschild.

In an abundance of caution, Fox Rothschild has implemented an ethical screen to prevent any contact with information secured from LRP Publications, Inc. in the O'Donnell Litigation from being accessed by anyone at Fox Rothschild LLP involved with the current litigation. Id., ¶ 13.

### III.   ARGUMENT

In order to prevail on his motion seeking disqualification pursuant to Rule 1.9(a) of the Connecticut Rules of Professional Conduct, plaintiff Kutik bears the burden of proving that he is "a former client of the adverse party's counsel" and that there is a "substantial relationship between the subject matter of counsel's prior representation of the moving party and the issues of the present lawsuit." See, e.g., Colorpix Systems of Am. v. Broan Mfg. Co., 131 F. Supp. 2d 331, 336 (D. Conn. 2001); Evans v. Artek Sys. Cop., 715 788, 791 (2d Cir. 1983) State v. Jones,

5

429 A.2d 936, 939-40 (D. Conn. 1980).

This is an onerous and substantial burden. That is because motions to disqualify opposing counsel are viewed with "disfavor" in the Second Circuit. Rodriguez v. City of New Haven, 214 F.R.D. 66, (D. Conn. 2003) (citing Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978); see also Petroquima de Venezuela, S.A. v. M/T Trade Resolve (In re Martima Aragua), 847 F. Supp. 1177, 1179 (S.D.N.Y. 1994). The principle reason for this is "because of the potentially adverse effect on a client's right to engage counsel of his or her choosing, and because such motions are often made for tactical reasons." Id. (citing Cook); see also Evans v. Artek Sys. Cop., 715 788, 791 (2d Cir. 1983)). Accordingly, "[c]ourts require parties seeking disqualification of counsel to meet a high standard of proof before disqualification may be granted." See Evans, 715 F.2d at 791. As this Court stated recently:

> Because of a concern that such motions may be used for tactical reasons, and in order to safeguard the interests of clients in selecting the lawyers of their choice, the Second Circuit has emphasized that a party moving for disqualification carries a heavy burden, and for this reason, courts should approach motions to disqualify with caution.

Norris v. City of New Haven, 2006 WL 2567866 at *2 (D. Conn. 2006).

As a result, motions seeking disqualification under Rule 1.9 should be granted "with caution," Rodriguez, 214 F.R.D. at 68, and "only upon a showing that the relationship between the issues in the prior and present cases is 'patently clear.'" Colorpix, 131 F. Supp.2d at 338 (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739-40 (2d Cir. 1978)). "Disqualification has been granted or approved recently only when the issues involved have been 'identical' or 'essentially the same.'" Id. (quoting Cook); see also Berguron v. Mackler, 623 A.2d 489, 494 (Ct. 1993); (same). That inquiry "requires a careful comparison of the similarities between the issues raised in the former and present representation." Norris v. City of New

6

Haven, 2006 WL 2567866 (D. Conn. 2006) (citing Prisco v. Westgate Entm't, Inc., 799 F. Supp. 266, 270 (D. Conn. 1992).

      A.    **Because Plaintiff Kutik Has Failed to Prove That He Was Previously a Client of Fox Rothschild, His Motion to Disqualify Fox Rothschild is Meritless**

           1.    **Plaintiff Kutik Identifies No Factually Analogous Case Supporting His Novel Theory that a Company's "Consultant" Is a "Vicarious Client" of the Company's Attorney**

The threshold issue is whether plaintiff Kutik was ever a client of Fox Rothschild. Kutik concedes that he was never directly represented by Fox Rothschild. Instead, he creatively argues that he was a "vicarious client" based on the assertion that he was a "consultant" for non-party LRP Publications, Inc. ("LRP"), which Fox Rothschild represented between 2008 and 2010 in an employment discrimination lawsuit. He offers no case – and Fox Rothschild is unaware of any case -- where any court concluded that a "consultant" of a law firm's client is also that firm's "vicarious client." Perhaps this is not surprising, for Kutik's novel theory carries a great risk of a substantial expansion of a lawyer's duties and obligations to any "consultant" of a client. There is a clear danger going down the path mapped out by Kutik.

Kutik cites only two cases, noting the "limited case law in this jurisdiction regarding vicarious attorney client relationships" (Kutik Br. at 9). This, of course, reflects how rarely courts will conclude a non-client to be a "vicarious client." Indeed, we have found only a handful of cases addressing a contention that a non-client was a "vicarious client," and almost all of these cases deal with corporate parents, subsidiaries, affiliates and partnerships – not at issue here – and in many of these cases the court rejected the "vicarious client" argument.[1] Kutik's

---

[1] See, e.g., Strategem Develop. Corp. v. Heron Int'l N.V., 756 F. Supp. 789, 792 (S.D.N.Y. 1991) (attorney for parent corporation disqualified in case against subsidiary because the liabilities of a subsidiary corporation directly affect the bottom line of the parent); Hartford Accident v. RJR Nabsico, Inc., 721 F. Supp. 534, 540 (S.D.N.Y. 1989) (parent, through its subsidiary, was client of firm because parent's general counsel retained supervisory role over subsidiary litigation); Rosman v. Shapiro, 653 F. Supp. 1441 (S.D.N.Y. 1987) (disqualifying defendant's

position here seeks to stretch an unusual theory into new territory.

Kutik makes no argument that the first case, <u>Colorpix Sys. v. Broan Mfg. Co., Inc.</u>, 131 F. Supp. 2d 331 (D. Conn. 2001), bears any factual resemblance to the present litigation. Nor could he. In that case, the attorney whose disqualification was sought previously represented the parent (Nortek) and affiliate (Nordyne) of a company (defendant Broan) to which the attorney was adverse in the current lawsuit. Both Broan and Nordyne comprised "a substantial share of Nortek's business" and used Nortek's legal department, sharing the "same business philosophy" and "uniform business strategy and approach" and even "expert witnesses" in products liability cases at issue in both the prior and current representation. What is more, the outcome of the current litigation was likely to "directly and adversely affect Nortek's bottom line." <u>None</u> of these factors found relevant by the court in <u>Colorpix</u> is present here, and Kutik makes no argument otherwise.

Kutik's other case is similarly of no help to his "vicarious client" theory. In <u>Glueck v. Jonathan Logan, Inc.</u>, 653 F.2d 746 (2d Cir. 1981), the attorney whose disqualification was sought wanted to represent an incorporated trade association while, *at the same time*, representing an individual client adverse to a corporation with a division that was a member of the trade association. This case did not involve former clients under Connecticut Rule 1.9(a); it instead involved the simultaneous and adverse representation of entities claimed to be clients under Canon 5 of the no-longer-applicable Canons of the Code of Professional Responsibility.

Thus, the <u>Glueck</u> case dealt with not only different facts but also a different and "more

---

attorneys because firm represented closely-held corporation in which plaintiff and defendant each held 50% of the stock); <u>but see</u> <u>Ives v. Guilford Mills, Inc.</u> 3 F. Supp. 2d 191, 203-04 (N.D.N.Y. 1998) (attorney for former executive employee and general manager of defendant-partnership in tortious interference and slander case against partnership not disqualified because attorney's former representation of partnership in bankruptcy case was not substantially related to the current case); <u>Rodriquez v. City Of New Haven</u>, 214 F.R.D. 66 (D. Conn. 2003) (attorney for defendants not disqualified in action by detective for wrongful internal affairs investigation and discipline of

8

stringent" ethical rule applicable to concurrent, not former, clients.[2] And the particular posture of the case clearly impacted the court's conclusion that the trial court had not abused its discretion when finding that ongoing adversity presented a number of "risks that demonstrate[d] the requisite relationship between Glueck's lawsuit and the subject matter of the [attorney's] representation of the [trade] Association." Id., at 750.[3] Once again, these facts and applicable ethical rule bear no resemblance to the alleged conflict asserted here by Kutik. Glueck is inapposite.

> **2.    Plaintiff Kutik Fails to Meet his Burden of Establishing Facts Showing that He was a "Vicarious Client" of Fox Rothschild**

Kutik makes little effort to show how he meets the analysis set forth in the Colorpix decision to determine whether one is a "vicarious client." The Colorpix court stated:

> The issue is not whether … the relationship … is in all respects that of attorney and client, but whether there exist sufficient aspects of an attorney-client relationship for purposes of triggering inquiry into the potential conflict involved in [the attorney's] role as … counsel in [the present] action.

Colorpix, 131 F. Supp.2d at 336. The court further identified several relevant factors, including the following:

- whether "the current litigation will have a financial impact on the former, 'traditional,' client";

- "the importance that the former corporate parent client has attached to the current litigation against its subsidiary";

- "whether the affiliated companies share an 'identity of interest,' for

---

detective in a murder investigation where attorney previously represented detective in action for filing a false police report because cases were not substantially related).

[2] The Second Circuit has adopted a "more stringent" "per se" rule when dealing with concurrent representations of adverse clients. See Ives v. Guilford Mills, Inc., 3 F. Supp. 2d 191, 202 (D. Conn. 1998) (citing Cinema 5, Ltd. V. Cinerama, Inc., 528 F.2d 1384, 1386-87 (2d Cir. 1976)).

[3] These risks included the "risk that the issue of whether [the company] had cause to terminate Glueck might well arise in the course of collective bargaining discussions conducted by [the attorney] for the Association" as well as the "risk that in preparing for collective bargaining sessions, the law firm might learn of [company's] policies or past practices bearing on the subject of Glueck's termination."

9

example, whether the companies have 'substantially similar management personnel,' share 'the same corporate principles and business philosophy and share the services of one legal department.'"

Colorpix, 131 F. Supp. 2d at 336-337.

Here, there are no indicia whatsoever of an attorney client relationship between Fox Rothschild and Kutik.  Mr. Ludwig never met Kutik during the prior litigation (or at any other time, for that matter) and he knows nothing about Kutik or his relationship with LRP.  See Ludwig Declaration at ¶¶ 5-6.  Kutik's name was never mentioned in any deposition, nor was it referenced in any pleading or communication in connection with the case.  Id.

What is more, none of the various factors identified in Colorpix are present here.  The current litigation will have zero "financial impact" on LRP because any recovery in the current lawsuit belongs to Kutik, who is merely a consultant to LRP.  Moreover, LRP is not a "corporate parent" of Kutik, and thus the progress and outcome of this litigation does not directly concern LRP.  Lastly, Kutik, as a consultant, shares no management personnel, corporate principles, business philosophy or legal department with LRP.  Kutik is simply a consultant, having a different operation and legal existence than LRP.[4]

As a result, Kutik has failed to sustain his burden of proving that he was a client of Fox Rothschild's, and, as a result, his motion should be denied.

### B. Assuming Arguendo Plaintiff Kutik Was Previously Fox Rothschild's Client, Plaintiff Kutik Has Failed to Prove that the Purported Prior Representation Was Substantially Related to the Current Case

Assuming Kutik prevails on his novel "vicarious client" theory, that does not end the inquiry.  He must next prove that there is a "substantial relationship" between the prior

---

[4] Kutik's independence of LRP is further evidenced by the fact that in this litigation he is taking the position that LRP's documents are not in his possession, custody or control and, as a result, he will not produce any LRP documents.

10

representation and the current representation that requires disqualification.  In other words, he must show that it is "patently clear" that the issues involved in the two litigations are "'identical' or 'essentially the same.'"  Colorpix, 131 F. Supp.2d at 338 (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739-40 (2d Cir. 1978)).  Here, Kutik cannot meet this "high standard of proof."  Evans, 715 F.2d at 791.

> 1. **Plaintiff Kutik's Admission that the Two Cases are "Not Identical or Essentially the Same" is Fatal to His Disqualification Motion**

Here, Kutik argues the wrong law (as explained below) and concedes that he cannot meet this test.  He admits that "this matter is not identical or essentially the same as the employment discrimination matter…."  See Kutik Br. at 15.  This admission – which tracks verbatim the precise test that Kutik must meet -- is fatal to his argument, and his motion should be denied.

> 2. **Kutik's Admission is Well Supported by the Record and Warrants Denial of His Motion**

Given his significant admission, Kutik never articulates any basis for this Court to conclude that the "issues" in the two lawsuits are "identical" or "essentially the same."  There is, in any event, ample basis for Kutik's admission that these two cases are neither identical or essentially the same.  The prior litigation was an employment discrimination lawsuit that focused on events taking place in 2005-2007.  The current litigation is a false advertising lawsuit that focuses on events taking place in and around 2011 and thereafter.  The prior litigation concerned an employee's work selling ad pages for LRP's HRE Magazine.  Mr. Kutik's work as consultant for LRP did not concern HRE Magazine.  The prior litigation did not concern LRP's HR Technology Conference whereas Kutik asserts that this lawsuit places at issue his consulting work for LRP regarding the HR Technology Conference.

In other words, the two lawsuits involve different parties, different legal theories,

11

different time periods and different aspects of LRP's business.  The issues are, as Kutik admits, not identical or essentially the same.

### 3. Kutik Urges This Court to Adopt a New Test for Substantial Relationship that is Contrary to Established Precedent

Recognizing that he can not argue otherwise, Kutik urges this Court to adopt a test for "substantial relationship" that is not the law of this circuit.  He asserts that the

> substantial relationship test can be met one of two ways.  First, the court may consider whether the issues in the two cases are identical or essentially the same.  Second, the court may consider whether the confidential information gained from the prior representation is relevant and useful to the current client in the representation.

See Kutik Br. at 14-15.  While Kutik's "first" way to show "substantial relationship" is correct, his proposed "second" way is not.  Under the test set forth in Evans, Colorpix and other cases within the Second Circuit, there is no other way to show substantial relationship other than through analysis of whether it is "patently clear" that the issues are "identical or essentially the same."

In support of this assertion, Kutik cites one case, a federal bankruptcy case, In re PGH Int'l, Inc., 222 B.R. 401 (Bankr. D. Conn. 1998).  In that case, however, the court did not adopt Kutik's proposed alternative way to show "substantial relationship."  It was relying on a prior bankruptcy court decision, In re Marks & Goergens, Inc., 199 B.R. 922 (E.D. Mich. 1996) (applying Michigan law), where that court determined that a law firm's prior representation of a company in a sales transaction involved the same issues as the law firm's current representation of another client seeking to challenge the very same sale in the company's bankruptcy.  The court concluded that the issues in the two matters were substantially related.  In PGH, the court found that the facts before it were "strikingly similar" to the Marks & Goergens case.  Neither decision stands for the proposition that disqualification is appropriate even if the issues are not

"identical or essentially the same," as Kutik argues.  Kutik is misstating the law.

Thus, there is no legal basis for Kutik's argument that the substantial relationship test is satisfied by a showing that Fox Rothschild had "access" to "confidential information" that is "useful" to the current litigation.

      **4.    Even if Kutik's Proposed New Test Were The Law, He Has Failed to Satisfy It.**

In arguing that Fox Rothschild "gained" "confidential information" in the O'Donnell case that is "relevant and useful" to the current lawsuit, Kutik argues that in the O'Donnell litigation, Fox Rothschild had "access" to "confidential information" that is "relevant and useful" to SharedXpertise in the current litigation.  In particular, he repeatedly contends that Fox Rothschild had "*access*" to LRP's "employees," "all of LRP's company records" and "all of LRP's sales records."  See Kutik Br. at 16, 17; McKenna Declaration at ¶ 7 ("access to…").  Having "access" to documents and information, however, isn't the same as actually getting them.  Kutik never says and provides no reason why Fox Rothschild actually obtained the enormous amount of documents and information about all aspects of LRP's business.  That would make no sense given the limited issues in the prior O'Donnell lawsuit.  Nor does Kutik explain how any documents Fox Rothschild may have obtained would be "relevant and useful" given that such documents would have focused on 2006 and before while this lawsuit is based on a press release issued in 2011.  Again, Kutik's motion lacks common sense.

Second, plaintiff Kutik stresses repeatedly the dealings in 2008-2010 between LRP employee Rebecca McKenna and Fox Rothschild attorney Steven Ludwig in the O'Donnell case.  Of course, that relationship does not make the issues in the two litigations identical or essentially the same, especially given Kutik's admission that they are not.  While Ms. McKenna may have been identified as a witness in both litigations, the reasons are quite different, because the legal

13

and factual issues are quite different.  O'Donnell's lawsuit "involved allegations about" Ms. McKenna.  See Declaration of Rebecca McKenna, ¶ 5.  O'Donnell's performance selling ads for LRP's magazine, over which Ms. McKenna had direct responsibility, was highly relevant in the O'Donnell litigation.  Id., ¶ 3.  And how Ms. McKenna "interact[ed] with [her] staff" was also apparently relevant to the discrimination claim.  Id. ¶ 7.

In this case, by contrast, LRP's HRE Magazine and Ms. McKenna's supervision over O'Donnell's work relating to the HRE Magazine are not at issue.  LRP makes no argument otherwise.  Rather, what's relevant in this case is plaintiff Kutik's work as consultant for LRP responsible for the HR Technology Conference.  See, e.g. Complaint, ¶¶ 7, 12, 13.  Neither Kutik nor his work for that conference was at issue in the O'Donnell litigation.  See Ludwig Declaration, ¶¶ 3-4.  Since the issues in the two lawsuit are completely different, there is no reason to believe that Ms. McKenna actually disclosed to Fox Rothschild any information that is relevant and useful to the current lawsuit.

Lastly, Kutik invokes what it calls the "playbook view," i.e., the idea that a lawyer may learn a client's "approach to general or specific litigation" and would gain an "unfair advantage" in subsequent litigation adverse to that "client."  See Kutik Br. at 19.  This theory makes no sense given that there is no question that Fox Rothschild did not represent Kutik and never spoke with him during the prior litigation.  See Ludwig Declaration, ¶ 6.  As a result, Fox Rothschild did not and could not have learned anything about how *Kutik* handles litigation involving him as a party.[5]  Kutik's argument is patently frivolous.

Assuming arguendo that non-parties LRP's or Ms. McKenna's litigation strategies have some bearing in this case to which neither is a party, the fact that Fox Rothschild represented

LRP (and dealt with LRP employee Ms. McKenna) in *one* employment discrimination litigation that concluded *two years ago* hardly means that Fox Rothschild now knows LRP's "playbook" in litigation generally.  Again, these litigations are completely different, and deal with different legal issues and different time periods.  It is an enormous, and counter-intuitive, stretch for LRP to assert that Fox Rothschild obtained an understanding of LRP's litigation strategies.

To the extent that it is possible that Fox Rothschild obtained any confidential privileged information from its prior representation of LRP that is relevant to the instant lawsuit, Fox Rothschild has, out of an abundance of caution, implemented an ethical screen precluding attorneys who are working in the current litigation from having any access to information relating to the prior lawsuit.  This screen is more than sufficient to eliminate any concerns raised by Kutik's motion.

### C. Defendant SharedXpertise's Significant and Longstanding Relationship with Fox Rothschild Supports Denial of Kutik's Motion

In deciding motions to disqualify, courts consider the "client's interest in freely selecting counsel of her choice."  Norris, 2006 WL 2567866 at * 2 (citing Hull v. Celanese Corp., 513 F.2d 568, 570 (2d Cir. 1975)).  Here, defendant SharedXpertise's choice of Fox Rothschild as its counsel is based on their longstanding attorney-client relationship.  Fox Rothschild is outside general counsel for the company and has represented the company in a wide variety of legal matters (e.g., litigation, corporate/transactional, trademark) ever since its formation in 2007.  It would impose a great hardship on SharedXpertise should Fox Rothschild be disqualified from representing it on this case, especially considering how long this case has been active and the upcoming June discovery cut off dates.

---

[5] Kutik spends three pages analyzing the "playbook" theory without ever acknowledging that Fox Rothschild has never learned anything about the way Kutik approaches litigation.  See Kutik Br. at 19-21.  His arguments go into Fox Rothschild's purported dealings with Ms. McKenna, but neither she nor LRP is a party in the current litigation.

15

## IV. CONCLUSION

For those reasons and the others set forth above, SharedXpertise respectfully requests that this Court deny Kutik's motion seeking the disqualification of SharedXpertise's counsel, Fox Rothschild LLP.

Respectfully submitted,

Dated: April 12, 2012

/s/ Robert C. Clothier
Robert C. Clothier (admitted *pro hac vice*)
Amit Shah (admitted *pro hac vice*)
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Tel: (215) 299-2000
Fax: (215) 299-2150
rclothier@foxrothschild.com
ashah@foxrothschild.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 12, 2012, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by cooperation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic filing. Parties may access this filing through the Court's CM/ECF System.

                                            /s/ Amit Shah
                                            Amit Shah