UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM M. KUTIK, | : |
| Plaintiff, | : Civil Action No. 3:11-CV-00605-JBA |
| v. | : |
| SHAREDXPERTISE MEDIA, LLC, | : |
| Defendant. | : |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF WILLIAM M. KUTIK'S MOTION TO DISQUALIFY DEFENDANT'S COUNSEL FOX ROTHSCHILD LLP**

 

COHEN AND WOLF, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06601
Telephone: (203) 337-4144
Facsimile: (203) 394-9901

*Of Counsel:*

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

**PRELIMINARY STATEMENT**

Defendant's opposition papers do not dispute the key facts that require disqualification of Fox Rothschild LLP ("Fox").

First, Defendant does not dispute that in the course of Fox's prior representation of LRP Publications, Inc. ("LRP"), Fox received highly confidential and detailed information concerning LRP's sales and business strategies, including the following confidential information provided to Fox by its principal contact at LRP, Rebecca McKenna:

> how we attract customers and sell advertising, conference space, online advertising and sponsorships, how my staff and I handle integrating our advertising sales with the HR Technology Conference & Exposition; how I interact with advertisers, exhibitors and sponsors; how I interact with my staff, how my staff interacts with advisers, exhibitors and sponsors; information regarding specific rates charged for advertising; information regarding proposals for advertising solicitations; information regarding LRP's positioning in the marketplace; and information regarding how LRP differentiates itself from competitors' publications, websites and conferences.  (McKenna Aff. ¶ 7).

Second, Defendant's opposition papers do not dispute that, in defending the present case, Fox's principal strategy is to demonstrate that LRP did not suffer any loss of sponsorship, conference revenue, advertising revenue or other revenue as a result of the false press release and that Kutik – who claims damages based on the diminution of LRP's revenue, a portion of which was paid to Kutik under his contract with LRP – likewise suffered no loss.  The confidential information provided to Fox in the course of its prior representation goes to the heart of the issues to be tried in this case.  Indeed, Fox already has identified Rebecca McKenna as a key person with relevant knowledge whose deposition they intend to take in this action, and Fox undoubtedly will cross-examine her about the very topics as to which Ms. McKenna previously provided confidential

1

information. The relevance of the confidential information obtained by Fox in the first case to Fox's representation of the defendant in the second case demonstrates that the two cases are "substantially related," as that term is used in Rule 1.9 of the Conn. Rules of Prof. Conduct, even though there are differences between the nature of the claims and the events giving rise to the claims in each case. Defendant's argument to the contrary misstates the law.[1] (See Point I).

Third, Defendants' opposition papers likewise do not deny that Fox's actions in this case will be necessarily adverse to its former client, LRP, even though LRP is not a party to this litigation. Kutik claims damages based on the loss of revenue he received under his consulting agreement with LRP as a result of the false press release. LRP has commenced its own action, in Florida, seeking damages based on the loss of revenue it incurred as a result of the false press release. Kutik and LRP thus have a unity of interests. To the extent Fox develops evidence in the present case suggesting that LRP did not suffer loss in revenue, through its deposition examination of Ms. McKenna or otherwise, such evidence will prejudice LRP in the Florida case. Fox also has asserted an affirmative defense in this case alleging that Kutik and LRP supposedly "conspired" to bring these actions "in bad faith." Here too, Fox's efforts to prove up its affirmative defense will prejudice LRP. The parties are conducting discovery in the two cases jointly – with Defendant's lawyers in both this action and the Florida action coordinating efforts, jointly attending depositions, and receiving the same documents – and LRP will be manifestly prejudiced from Fox's continued presence in this matter.

---

[1] *See* Defendant's Memorandum of Law In Support of Opposition to Plaintiff's Motion to Disqualify Defendant's Counsel, Fox Rothschild LLP ("Def. Opp. Br.") at 10-13.

2

Under these circumstances, Fox's continued representation of the defendant here plainly violates Rule 1.9(a).  Having formerly represented LRP in a matter "substantially related" to the present matter, Fox cannot now represent a party in this action whose interests are "materially adverse to the interests" of LRP, Fox's former client.  Fox's continued representation of the defendant would adversely affect its former client, which is united in interest with Kutik, and Fox should be disqualified.  This is exactly the rule articulated in the line of authority applying the vicarious client doctrine, under which a law firm is disqualified from acting against a party that was not technically the firm's former client, but where, as here, the firm's representation nevertheless would adversely affect the former client.  (See Point II).

Defendant's reliance on an alleged ethical screen that Fox supposedly has established is also misplaced; an ethical screen cannot, as a matter of law, cure a conflict of interest in violation of Rule 1.9(a).  Defendant's opposition papers also do not provide sufficient information about the alleged ethical screen to demonstrate that the screen is adequate to protect against the use of LRP's confidential information in the current litigation.  (See Point III.)

Finally, Kutik does not object to Attorney Osterberg's continued representation of Defendant, so long as Attorney Osterberg remains unaffiliated with Fox.  As such, Defendant will suffer no prejudice whatsoever by the disqualification of Fox.

## ARGUMENT

Defendants' papers misstate the standard to be applied in this motion.[2]  Although parties typically have the right to choose their own counsel, this right must be balanced against "the [movant's] interest in protecting confidential information . . . and the

---

[2] *See* Def. Opp. Br. at 5-7, 15.

3

public's interest in the scrupulous administration of justice." *Bergeron v. Mackler*, 225 Conn. 391, 398 (1993) (citation and internal quotations omitted); *see also Gov't of India v. Cook*, 569 F.2d 737, 739 (2d Cir. 1978) ("[A] client's right freely to choose his counsel . . . must be balanced against the need to maintain the highest standards of the profession."). It is "more important that unethical conduct be prevented than that [a party] have an unfettered right to counsel of its choice." *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir. 1984), *cited with approval in*, *Dunton v. County of Suffolk*, 729 F.2d 903, 908 n. 4 (2d Cir. 1984). Kutik has established that his interests in protecting confidential information and preventing unethical conduct and the public's interest in the "scrupulous administration of justice" outweigh Defendant's interest in the selection of its counsel, Fox.

"[I]t is also well-established that any doubts created by the movant's proffer must be resolved in favor of disqualification." *Ives v. Guilford Mills, Inc.*, 3 F. Supp. 2d 191, 202 (N.D.N.Y. 1998) (citing *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)).

**I.     Defendant Disregards Well-Settled Authority Establishing That Fox's Prior Matter for LRP Is "Substantially Related" To This Matter as A Matter of Law, Based on the Undisputed Facts.**

Defendant's papers likewise misstate the test for determining when two cases are "substantially related" within the meaning of Connecticut Rules of Professional Conduct 1.9.[3] Section (a) of that rule, which governs disqualification of counsel for a conflict of interest based on opposing counsel's current representation of a client whose interests are adverse to those of a former client, states as follows:

---

[3] *See* Def. Opp. Br. at 10-13.

4

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent . . . .

Defendant erroneously argues that two matters are "substantially related" only if they involve issues that are "identical" or "substantially the same."[4] But Defendant's argument is flatly contradicted by the Official Commentary to Rule 1.9, which states that: "Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute *or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.*" Conn. R. Prof'l Conduct 1.9 Comment 3 (emphasis added).

Defendant's erroneous argument is also contradicted by the cases interpreting Rule 1.9 in accordance with the official commentary. *See, e.g.*, *Vincent v. Essent Healthcare of Conn.*, 465 F. Supp. 2d 142, 145 (D. Conn. 2006) ("A subsequent matter is *substantially related* to an earlier matter . . . if there is a *substantial risk that the subsequent representation will involve the use of confidential information* of the former client obtained in the course of the representation."); *Colorpix Sys. of Am. v. Broan Mfg. Co.*, 131 F. Supp. 2d 331, 338 (D. Conn. 2001) ("[A]n earlier consultation [is] sufficiently related to a later case to warrant disqualification [if] the information the client disclosed in that earlier consultation is useful in the later case [and] *[i]nformation can be useful even if the two matters are not identical*.") (emphasis added).

As shown above and in Plaintiff's moving papers, Kutik has demonstrated a "substantial risk" that the "confidential factual information" that LRP previously

---

[4] *See* Def. Opp. Br. at 11.

5

provided to Fox -- confidential information regarding LRP's sales and business strategies for advertising, conference space, online advertising, sponsorships, and other sources of revenue: its position in the marketplace and how it distinguishes itself from its competitors -- would be "useful" and "materially advance" the position Defendant has taken in this litigation, *i.e.*, that LRP allegedly suffered no loss in revenue as a result of the false press release.[5]  As such, the two actions are "substantially related" within the meaning of Rule 1.9 "even if the two matters are not identical."  *Colorpix* 131 F. Supp. 2d at 338.

## II. Defendant Also Disregards That Its Representation of Defendant Here Will Be Adverse to the Interests of Its Former Client, And Fox's Disqualification Therefore Is Required.

Defendant argues that the motion for disqualification should be denied because Fox never represented Kutik himself and, Fox claims, "that fact ends any further inquiry."[6]  But the test under Rule 1.9(a) is not whether Fox previously represented Kutik.  Nothing in Rule 1.9 requires a former client itself to be a party to the new action for there to be an impermissible conflict of interest.  To the contrary, the test under the Rule is whether the interests of Fox's current client, SharedXpertise, are adverse to its former client, LRP.  And there can be no question here that Kutik and LRP are united in interest.  By taking action in this case against Kutik, Defendant's interests are adverse to LRP.  By representing SharedXpertise, Fox's actions will prejudice its former client,

---

[5] Defendant argues that the information Fox gained in the prior representation is not relevant to the current litigation because the issues in the litigations are different.  *See* Def. Opp. Br. at 13-14.  But the confidential information Fox gained in its representation of LRP, such as LRP's sales and marketing strategy for conferences, websites and publications, its positioning in the marketplace and information regarding how LRP differentiates itself from SharedXpertise and other competitors, is relevant to Kutik's claim for damages here.  *See* Kutik Br. at 18.  Although Fox obtained the confidential information in a case involving different legal issues and claims, the information is nevertheless relevant and useful to its representation of SharedXpertise in this case, as defendant has acknowledged by seeking to depose the very person who provided that information to Fox.
[6] Def. Opp. Br. at 2, 7-10.

6

LRP, and adversely affect LRP's interests in the Florida litigation. That alone is sufficient to disqualify Fox under Rule 1.9(a).

As demonstrated in Plaintiff's moving papers, the vicarious client doctrine is used regularly in circumstances similar to those present here to identify instances where a law firm's actions against a party that was not technically the firm's prior client will nevertheless adversely affect the interests of a prior client. In those circumstances, as here, the firm must be disqualified, and the party against whom the firm is prohibited from acting is deemed to have been a 'vicarious client' of the law firm. *See Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir. 1981); *Colorpix Sys. of Am. v. Broan Mfg. Co.*, 131 F. Supp. 2d 331 (D. Conn. 2001).

In applying the vicarious client doctrine, courts have focused on the nature of the relationship between the prior client and the moving party in order to determine whether the prior client will be harmed by the representation against the moving party, as here, in which case the law firm will be disqualified. Thus, the court's focus is on whether "the current litigation will have a financial impact on the former, 'traditional' client." *Colorpix*, 131 F. Supp. 2d at 336. *See also Petroquimica De Venezuela, S.A. v. M/T Trade Resolve (In re Maritima Aragua, S.A.)*, 847 F. Supp. 1177, 1182 (S.D.N.Y. 1994) (recognizing that non-party former clients have the right to prevent the use of confidential information in a current litigation where their financial interests are affected by the current litigation). Courts also look to whether there is a "unity of interest," such that action against the vicarious client adversely affects the actual prior client, in which case disqualification also is warranted. *See Colorpix*, 131 F. Supp. 2d at 337.

7

Here, the current litigation will have a significant financial impact on LRP because Kutik and LLP share a unity of interest. To establish his own damages, Kutik must prove that LRP lost revenue as a result of the false press release. LRP has its own identical interest in demonstrating that it lost revenue as a result the false press release, in order to prove its damages in the Florida litigation.[7] Fox's key strategy in the present case is to demonstrate that LRP did not suffer any loss of revenue as a result of the false press release and that Kutik likewise suffered no loss. To the extent Fox develops evidence in the present case suggesting that LRP did not suffer loss in revenue, such evidence will prejudice LRP's position in the Florida case. Fox also will act adverse to LRP in connection with Defendant's affirmative defenses alleging that Kutik and LRP supposedly conspired to bring this action in bad faith.

In these circumstances, Fox's continued representation of SharedXpertise is plainly adverse to the interests of LRP. Fox should therefore be disqualified under the clear language of Rule 1.9(a), and in accordance with the vicarious client doctrine, even though Kutik himself was not a prior client of Fox.

**III.   Fox's Alleged Ethical Screen Does Not Cure the Conflict.**

Defendant's reliance on an alleged ethical screen that Fox supposedly has established is misplaced because an ethical screen cannot, as a matter of law, cure a conflict of interest under Rule 1.9(a). The only cure for such a conflict is informed,

---

[7] In addition to the unity of their interest in establishing damages resulting from defendant's misconduct, Kutik and LRP also have an identity of interest in that they share the same business philosophy, corporate principles, and outside attorneys. As a consultant with LRP and co-chair of LRP's HR Technology Conference and Exposition (the "Expo"), Kutik must act in accordance with LRP's business philosophy, corporate strategy and approach. Kutik's responsibility programming the Expo means he has to competently execute LRP's outline. Otherwise, the Expo will not operate effectively and Kutik's working relationship with LRP will not be successful. Kutik and LRP also share the same outside attorneys. These factors, together with their unity of financial interests, demonstrate that Kutik should be deemed a "vicarious client" of Fox for the purpose of Rule 1.9. *See* Kutik Br. at 11.

8

written consent from the former client.  *See Stenta v. Live Nation Worldwide, Inc.*, 2011 U.S. Dist. LEXIS 84229 at *7-9 (D. Conn. Aug. 1, 2011).  Nothing in Defendant's opposing papers is to the contrary.

And in all events, Defendant has not presented sufficient information regarding the alleged ethical screen to demonstrate that the screen is adequate to protect against the overt or inadvertent use of LRP's confidential information in the current litigation.  First, Fox has not submitted affidavits by anyone with personal knowledge of the screening measure or by the lawyer responsible for implementing and enforcing the ethical screen.[8]  Here, Defendant only provides a declaration by attorney, Steven Ludwig who states, "It is my understanding that . . . an ethical screen has been created . . . ."[9]  Defendant likewise has failed to submit any of the documentation through which Fox supposedly created and implemented the alleged ethical screen.

Second, Defendant fails to identify when it implemented its screening measures.  Timeliness of an ethical screen is essential to the protection of confidential information.[10]  To be effective, the "screening measures must have been established from the first moment . . . the firm received actual notice of the conflict."  *Chinese Auto. Distribs. of Am., LLC v. Bricklin*, 2009 U.S. Dist. LEXIS 2647 at *12 (S.D.N.Y. Jan. 8, 2009) (citation and internal quotations omitted).

---

[8] *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 124 cmt. d(ii) ("An adequate showing of screening ordinarily requires affidavits by the personally prohibited lawyer and by a lawyer responsible for screening measures.").

[9] Ludwig Decl. ¶ 13.  Mr. Ludwig's use of the phrase, "It is my understanding[,]" is troublesome because it seems like Mr. Ludwig does not have personal knowledge of whether an ethical screen was created.

[10] *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 124 cmt. d(iii) ("An affected client will usually have difficulty demonstrating whether screening measures have been honored.  Timely and adequate notice of the screening must therefore be given to the affected clients, including description of the screening measures reasonably sufficient to inform the affected client of their adequacy. ")

Third, an ethical screen cannot be instituted in response to a motion to disqualify. "This Court doubts whether any [ethical screens], which are meant to be preemptive, can ever function effectively when erected in response to a motion, and not prior to the arising of the conflict." *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1086-87 (S.D.N.Y. 1989); *accord La Salle Nat'l Bank v. County of Lake*, 703 F.2d 252, 259 (7th Cir. 1983) ("Although [counsel] states in his affidavit that he did not disclose to any person associated with the firm any information . . . on any matter relevant to this litigation, no specific institutional mechanisms were in place to insure that that information was not shared, even inadvertently, between the months of February [when the conflict arose] and August [when the disqualification motion was filed]."

## **CONCLUSION**

For the foregoing reasons, Mr. Kutik respectfully requests that this Court disqualify Fox Rothschild LLP from representing SharedXpertise Media, LLC in this matter. Disqualification of Fox will work no hardship whatsoever on Defendant, its protests to the contrary notwithstanding.[11] Indeed, Defendant is already represented in this matter by Attorney Osterberg. Kutik does not object to Attorney Osterberg's continued representation of Defendant, so long as Attorney Osterberg remains unaffiliated with Fox. To the extent Defendant believes it needs additional counsel, Defendant can readily arrange for new counsel that has no conflict of interest. Indeed, in the Florida litigation, involving claims asserted by LRP which are virtually identical to the claims asserted here, Defendant is already represented in that action by a law firm that has no affiliation with Fox. It would be no hardship for Defendant to be represented here by counsel that likewise has no affiliation with Fox.

---

[11] *See* Def. Opp. Br. at 15.

10

Dated: April 26, 2012                    Respectfully Submitted:


                                         COHEN AND WOLF, P.C.

                                         /s/ Stewart I. Edelstein
                                         Stewart I. Edelstein (ct06021)
                                         sedelstein@cohenandwolf.com
                                         1115 Broad Street
                                         P.O. Box 1821
                                         Bridgeport, CT 06601
                                         Telephone: (203) 337-4144
                                         Facsimile: (203) 394-9901

                                         *Attorneys for Plaintiff William M. Kutik*

*Of Counsel:*

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

**CERTIFICATION OF SERVICE**

I hereby certify that on April 26, 2012, a copy of the foregoing Reply Memorandum of Law in Further Support of Plaintiff William M. Kutik's Motion to Disqualify Defendant's Counsel Fox Rothschild LLP, was filed electronically.

Notice of the foregoing filing and this Certification of Service will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to any parties who are unable to accept electronic filing.

Parties may access the foregoing filings and this Certification of Service through the Court's system.

                                                  /s/ Stewart I. Edelstein
                                                  Stewart I. Edelstein