## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| WILLIAM M. KUTIK | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 3:11-CV-00605-JBA |
| | : | |
| v. | : | |
| | : | |
| SHAREDXPERTISE MEDIA, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

## PLAINTIFF WILLIAM M. KUTIK'S OBJECTIONS TO U.S. MAGISTRATE JUDGE MARGOLIS' RULING ON DEFENDANT'S EMERGENCY MOTION FOR AN "ATTORNEYS' EYES ONLY" PROTECTIVE ORDER

---

COHEN AND WOLF, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06601
Telephone: (203) 337-4144
Facsimile: (203) 394-9901

*Of Counsel:*

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

Plaintiff William M. Kutik ("Mr. Kutik"), by his attorneys and pursuant to Federal Rule of Civil Procedure 72, respectfully submits his Objections to Magistrate Judge Joan G. Margolis' (the "Magistrate Judge") Ruling on Defendant's Emergency Motion for an "Attorneys' Eyes Only" Protective Order (the "Ruling"), issued on April 25, 2012.

<u>**PRELIMINARY STATEMENT**</u>

The dispute giving rise to the Magistrate Judge's Ruling involves Defendant SharedXpertise Media, LLC's ("Defendant") release of an April 1, 2011 press release, which falsely claimed that Mr. Kutik was retiring from the human resources industry and would no longer run LRP Publications, Inc.'s ("LRP") HR Technology Conference & Exposition (the "Expo"). Defendant also falsely claimed that it had acquired the Expo. Mr. Kutik never had any intention of retiring from the human resources industry and defendant, undisputedly, did not acquire the Expo. Mr. Kutik's business and reputation were harmed as a result of what Defendant refers to as its April Fools Day mock press release.

The discovery issue here relates to the list of persons to whom defendant sent the false press release, as well as other documents relating to the computation of damages, such the identity of persons who became new customers of Defendant in the period shortly after the false press release was issued. There is no question that these documents are highly relevant. The identity of the persons receiving the false press release goes to the heart of the case. The other documents are necessary to identify those persons that, as a result of the false press release, did business with Defendant instead of the company

1

with which Mr. Kutik is affiliated, an important component in assessing Mr. Kutik's damages.

Defendant argued that the requested information – including the list of recipients of the false press release -- qualifies as proprietary trade secrets deserving of heightened attorneys' eyes only protection.  On March 13, 2012, Defendant filed Defendant's Emergency Motion for an "Attorneys' Eyes Only" Protective Order ("Defendant's Motion"), which Mr. Kutik opposed.

The Magistrate Judge granted in part and denied in part Defendant's Motion.  The Ruling denied attorneys' eyes only protection "for any customer, registrant, or e-mail recipient for which information is readily available on defendant's website[,]" but granted "extra protection for 'attorneys' eyes only' . . . for those customers, registrants, or e-mail recipients who have not been openly identified through resort to defendant's websites." Dkt. # 65 at 5.  Defendant's papers reflect that it sent the false press release to approximately 33,000 persons on its mailing lists, and that approximately 1,000 companies are publically identified on its website.  Thus, the Ruling provides attorneys' eyes only protection to the vast majority of the persons to whom Defendant sent the false press release.

As shown below, the Ruling makes it impossible for Mr. Kutik to prepare his case for trial, and contains no legal or factual basis justifying the decisions.  It is thus clearly erroneous.

As a result of the Ruling, Mr. Kutik is prohibited even from knowing the identities of the persons who received the press release at issue that contained false statements about him.  Without reviewing the complete list of the approximately 33,000

2

persons to whom Defendant sent the false press release and the other relevant documents he has requested, Mr. Kutik cannot assess the damages resulting from Defendant's misconduct. Mr. Kutik must review the requested documents himself so that he can identify for counsel the persons from whom he lost revenue, business or other opportunities. Counsel cannot make those determinations without Mr. Kutik's active participation and assistance. The Ruling even prevents counsel from discussing with Mr. Kutik the names of the persons from whom Mr. Kutik is likely to have lost business to the extent that Defendant claims the names of those person are purportedly "trade secrets," compounding the impossibility of preparing for trial.

The Ruling also does not reflect any factual or legal basis sufficient to justify this ruling. There is no finding as to how Defendant supposedly would be injured by Mr. Kutik's review of the requested information solely for the purpose of this litigation. This Court's Standing Protective Order is sufficient to protect against the misuse of confidential information, and no additional attorneys' eyes only provisions are required. The Standing Protective Order prohibits Mr. Kutik from using the information for business purposes, or disclosing it to the public, and provides that Mr. Kutik can use the information only in connection with this litigation. Defendant has not met the heavy burden of demonstrating that the requested information is entitled to additional attorneys' eyes only protection, and the Ruling does not reflect the reasons supporting the decision.

Mr. Kutik therefore respectfully requests that this Court sustain his Objections and reverse the portion of the Ruling granting attorneys' eyes only protection.

## ARGUMENT

### I.        Standard of Review.

When an objection is made under Rule 72, the presiding district court judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); Rule 72.2(b) of the Local Rules for United States Magistrate Judges.  Under this standard, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985); *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 168 (2d Cir. 2001) (same).

A ruling is contrary to law where "the magistrate judge has misinterpreted or misapplied applicable law."  *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000).  "Moreover, in this Circuit, the Magistrate is afforded broad discretion and his decision will be overruled only if that discretion is abused."  *Champion Int'l Corp. v. Liberty Mut. Ins. Co.*, 128 F.R.D. 608, 610 (S.D.N.Y. 1989).  A court "'abuses' or 'exceeds' the discretion accorded to it when [] its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous fact finding . . . ."  *Zervos*, 252 F.3d at 169.  As explained below, Mr. Kutik contends that the portion of the Ruling granting heightened protection is both clearly erroneous and contrary to law.

Under Rule 72, a magistrate judge's rulings also should be set aside where, as here, "the decision under review does not offer a reasoned explanation for its decision.*"*

4

*Holland v. Island Creek Corp.*, 885 F. Supp. 4, 6 (D.D.C. 1995) (emphasis added).  See also *Southern Pac. Commc'n Co. v. American Tel. & Tel. Co.*, 740 F.2d 980, 984 (D.C. Cir. 1984) ("[I]t is never justifiable for a judge to abdicate to a party his duty to provide a reasoned explanation for his decision.").  "[R]equiring district judges to provide a reasoned analysis helps them to reach the proper conclusion, for '[a] decisionmaker obliged to give reasons to support his decision may find they do not . . . .'" *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 630 (2d Cir. 1991) (citing *Arlinghaus v. Ritenour*, 543 F.2d 461, 464 (2d Cir. 1976).

## II.     The Ruling Is Contrary To Applicable Law and Is Clearly Erroneous.

Under the standards articulated above, the Ruling is contrary to law and clearly erroneous for at least five independent reasons:

First, the Ruling does not cite any factual or legal authority to supports a conclusion that extra 'attorneys' eyes only' treatment is necessary for any of the documents and information provided by defendant, and the Ruling should be set aside for this reason alone.  *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 630 (2d Cir. 1991) (citing *Arlinghaus v. Ritenour*, 543 F.2d 461, 464 (2d Cir. 1976); *Holland v. Island Creek Corp.*, 885 F. Supp. 4, 6 (D.D.C. 1995); *Southern Pac. Commc'n Co. v. American Tel. & Tel. Co.*, 740 F.2d 980, 984 (D.C. Cir. 1984).

Second, the Ruling does not recite any factual findings that Defendant will suffer a "clearly defined and serious injury" in the absence of an attorneys' eyes only order. *Uniroyal Chem. Co. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 56 (D. Conn. 2004) (The party seeking an attorneys' eyes only protective order must "demonstrate that disclosure

5

will work a clearly defined and serious injury" and this burden is not satisfied by "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning.").

Third, the Ruling does not reflect that the names at issue are "trade secrets" even under the standards articulated by the Magistrate Judge.   Indeed, the Ruling acknowledges that customer lists are not trade secrets where "the customers' names [could] readily be ascertained through ordinary business channels or reference resources." *Robert S. Weiss & Associates v. Wiederlight*, 208 Conn. 525, 538 (1988).  *See also Republic Sys. & Programming, Inc. v. Computer Assistance, Inc.*, 322 F. Supp. 619 (D. Conn. 1970), *aff'd per curiam*, 440 F.2d 996 (2d Cir. 1971) (the customer information lists at issue there did not qualify as trade secrets and thus did not deserve heightened protection because "[m]any of the clients were openly listed in plaintiff's advertising brochures as 'representative clients' and others were seeking bids from not only the plaintiff but from the plaintiff's competitors.").   While the Ruling exempts names indentified on Defendants own websites from attorneys' eyes only protection, there is no finding in the Ruling that the other names – the names as to which attorneys' eyes only protection was granted – cannot likewise be ascertained through regular business or reference resources.

Fourth, the Ruling fails to explain why the standard confidentiality order without special attorneys eyes only protection is insufficient.  The standard order would prevent Mr. Kutik from disclosing the protected information, or using it for any purpose other than this litigation, and adequately protects any legitimate interest of the Defendant. In *Goehler v. Wood*, for example, the court rejected the defendant's request for an attorney's eyes only order, and allowed the plaintiff to review information produced by the

6

defendant under a standard protective order, finding that "the protective order limits disclosure of confidential material to those who are necessarily involved in the case, and these parties may use this information only for purposes of litigating this case, excluding any business purpose, [and] the court concludes [Defendant's] confidentiality concerns have been addressed adequately."  162 F.R.D. 691, 697 (D. Utah 1995).  Similarly, in *Struthers Scientific & International Corp. v. General Foods Corp.* the court instructed the parties to draft a joint standard protective order "providing that any trade secrets obtained by either side in the course of discovery will be utilized only for the purpose of this litigation and will be revealed only during judicial proceedings."  45 F.R.D. 375, 378 (S.D. Tex. 1968).

Fifth, the Ruling makes it impossible for Mr. Kutik to prepare for trial, and places Mr. Kutik at a tremendous and unfair disadvantage.  The discovery requests at issue are narrowly tailored and highly relevant to this litigation.  They seek information relating to two subjects:  (a) the identities of the persons who received the false press release or related communications;[1] and (b) the identities of persons who became new customers of Defendant, or who registered for certain conferences presented by Defendant, during a

---

[1] The discovery requests regarding the identities of the persons who received the false press release or related communications are the following:

**Document Request No. 4**: The email mailing list used to disseminate the Press Release.

**Interrogatory Request No. 5**: Identify all Persons to whom You sent the Press Release (including but not limited to bloggers or aggregators, news distributors, and/or marketing vendors).  For each Person identified, state with specificity, the information the Person possesses about the Press Release.

**Interrogatory Request No. 6**: Identify all members of the email mailing list who were sent the Press Release or any communications relating to the Press Release, including but not limited to an email with a title stating "HRO Today Forum did not really acquire HR Executive & HR Tech Conference."

narrow time window after the false press release was issued.[2]  These requests are limited

to highly relevant information that go to the heart of this case; the requests do ***not*** seek all

of Defendant's "customer lists," "mailing lists," or "prospect lists," as Defendant may

suggest.  It is critically important that Mr. Kutik be able to review these documents to

asses his damages and assist counsel to prepare for trial.

     As noted, Defendant's papers indicate that it sent the false press release to

approximately 33,000 recipients.  Mr. Kutik needs to review the list of those who

received the false press release to identify the persons on that list from whom he believes

he has lost revenue or business opportunities.  Over 15 years, the Expo has attracted

approximately 20,000 unique attendees.  As co-chair during that time, only Mr. Kutik can

match up the names on the Defendant's distribution list with his own attendees who

failed to return as a result of receiving the false press release.  Counsel cannot review

those 33,000 names and, without any input from Mr. Kutik whatsoever, determine the

extent of Mr. Kutik's damages.  As reflected in the affidavit submitted by Mr. Kutik on

the motion below (Dkt. # 41), Mr. Kutik has developed over the last 22 years specialized

knowledge of the participants in the human resources technology industry.  He will

recognize the names of many persons who received the false press release, or their

---

[2] The discovery requests within this category are the following:

    **Document Request No. 7**: Documents sufficient to show new customers of SharedXpertise between April 1, 2011 and October 1, 2011.

    **Document Request No. 19**: Documents sufficient to identify registrants of any conference produced by SharedXpertise between April 1, 2011 and May 24, 2011.

    **Document Request No. 20**: Documents sufficient to identify the registrants of the HRO Today Forum between April 1, 2011 and April 15, 2011.

    **Interrogatory Request No. 12**: Identify all persons -- including but not limited to persons who contacted You or registration information, registrants, attendees, vendors and speakers -- who registered for HRO Forum Today 2012 or any other HRO Summit conference on or after the date of the Press Release, beginning April 1, 2011 through and including April 15, 2011.

companies, and is likely to have personal knowledge that is highly relevant to his damages. The Ruling prevents counsel from even speaking to Mr. Kutik about the names that are designated attorneys eyes only, and improperly prevents Mr. Kutik from participating in vital aspects of this litigation.

The false press release issued by Defendant makes false statements about Mr. Kutik and has caused him injury. Mr. Kutik should be permitted to see the names of the persons to whom the press release was sent and assist in the preparation of this case. To the extent that Defendant claims these names are purportedly a "trade secret" -- and the Ruling contains no facts indicating that this is the case -- Defendant is adequately protected by the standard confidentiality order.

Mr. Kutik also needs to review the lists of persons who became new customers of Defendant, or who registered for Defendant's conferences in the period shortly after the false press release was issued. As an important factor in establishing damages, Mr. Kutik intends to prove that certain persons, as a result of the false press release, did business with the Defendant instead of the company with which Mr. Kutik is affiliated. Here too, it is not possible for counsel to develop the appropriate evidence supporting Mr. Kutik's claim, without the active assistance of Mr. Kutik based on his personal knowledge of participants in the industry. Mr. Kutik's trial preparation cannot be limited to having counsel compare lists of names of the persons who attended each conference without input from Mr. Kutik. Mr. Kutik should be permitted to review the list of persons who did business with Defendant in the period shortly after the press release was issued, and share his personal knowledge about those persons, so that counsel and Mr. Kutik can develop the evidence needed to prove Mr. Kutik's damages at trial.

The Ruling fails to address the detrimental effect that an attorneys' eyes only order will have on Mr. Kutik.  Although the Ruling summarizes Mr. Kutik's position in that regard, (Dkt. #65 at 3), the Ruling does not discuss Mr. Kutik's factual assertions or the applicable law.  Nor does the Ruling explain why, in the circumstances here, the standard confidentiality order is not sufficient to protect any legitimate interest of the Defendant while also permitting Mr. Kutik to adequately prepare for trial.

## **CONCLUSION**

For these reasons, Mr. Kutik respectfully requests that these Objections be sustained and the portion of the Ruling granting attorneys' eyes only protection be reversed.  This Court's Standing Protective Order will sufficiently protect against the improper use of Defendant's confidential information.

Dated: May 9, 2012                                  Respectfully Submitted:


                                                    COHEN AND WOLF, P.C.


                                                    __/s/ Stewart I. Edelstein_____
                                                    Stewart I. Edelstein (ct06021)
                                                    sedelstein@cohenandwolf.com
                                                    1115 Broad Street
                                                    P.O. Box 1821
                                                    Bridgeport, CT 06601
                                                    Telephone: (203) 337-4144
                                                    Facsimile: (203) 394-9901

                                                    *Attorneys for Plaintiff William M. Kutik*


*Of Counsel:*

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

10

## **CERTIFICATION OF SERVICE**

I hereby certify that on May 9, 2012, a copy of the foregoing Plaintiff William M. Kutik's Objections to U.S. Magistrate Judge Margolis' Ruling on Defendant's Emergency Motion for an "Attorneys' Eyes Only" Protective Order was filed electronically.

Notice of the foregoing filing and this Certification of Service will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to any parties who are unable to accept electronic filing.

Parties may access the foregoing filings and this Certification of Service through the Court's system.

        /s/ Stewart I. Edelstein
Stewart I. Edelstein (ct06021)
sedelstein@cohenandwolf.com
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06601
Telephone: (203) 337-4144
Facsimile: (203) 394-9901

*Attorneys for Plaintiff William M. Kutik*

*Of Counsel:*

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

11