UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM M. KUTIK,<br>    *Plaintiff,*<br>  *v.*<br><br>SHAREDXPERTISE MEDIA, LLC,<br>    *Defendant.* | Civil No. 3:11cv605 (JBA)<br><br>November 20, 2012 |

**RULING ON PLAINTIFF'S MOTION TO DISQUALIFY**

Plaintiff William Kutik filed suit against SharedXpertise Media, LLC alleging unfair competition in violation of 15 U.S.C. § 1125(a) (Count I), a violation of "the right of publicity" under Connecticut State law (Count II), and a violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 110(a) *et seq.* (Count III). Plaintiff now moves [Doc. # 35] to disqualify Defendant's counsel, Fox Rothschild LLP ("Fox"), claiming that Fox's representation of Defendant is "tainted by a clear and substantial conflict of interest," because Fox previously represented LRP Publications ("LRP"), the company for which Plaintiff serves as a consultant, in an employment discrimination matter from 2008 through 2010. Defendant opposes, asserting that Plaintiff is not a former client of Fox, and that the prior representation described by Plaintiff was not "substantially related" to the present case. For the reasons that follow, Plaintiff's motion will be denied.

### I.     Factual Background

#### A.  Allegations of the Complaint

Plaintiff alleges that he is a consultant with LRP with a 10–year contract that ends in 2020. LRP and Defendant SharedXpertise are competitors in the human resources industry. (Compl. [Doc. # 1] ¶ 6.) LRP publishes *Human Resources Executive* magazine

and hosts periodic conferences for training and professional development of human resources specialists. Plaintiff alleges that he has programmed the HR Technology Conference & Exposition "since its inception 14 years ago and is the single person most identified with it." (*Id.* ¶ 7.) Defendant also publishes a human resources magazine, *HRO Today*, and produces the HRO Today Forum and HRO Demo Show. (*Id.* ¶ 9.) Defendant's magazines and forum and "demo" show directly compete with LRP's conferences and magazine. (*Id.*)

On April 1, 2011, SharedXpertise issued a press release on its website and by e–mail to recipients in the HR community that stated that it had "acquired LRP's Human Resource Executive Magazine and LRP's HR Technology Conference & Exposition." (*Id.* ¶ 9.) Plaintiff alleges that the content of the press release was "entirely false" (*id.* ¶ 10), and that it caused confusion among professionals, vendors and "industry thought–leaders" (*id.* ¶ 13).[1] Defendant later acknowledged that the press release had been an April Fool's joke (*id.* ¶ 14), though the press release remained on the HR Today Forum's website, and SharedXpertise's hrosummits.com website for several days, with no indications that the story was a joke. (*Id.* ¶ 15.)

Mr. Kutik alleges that the press release and news headline have caused him damage. (*Id.* ¶ 16.)

---

[1] LRP also filed suit against SharedXpertise in the Southern District of Florida claiming violations arising out of the same April Fool's Day joke. In June 2011, LRP and Mr. Kutik moved to transfer [Doc. # 14] both cases to the District of New Jersey, so that both cases could be adjudicated in the same district. However, the motion to transfer was denied in the Southern District of Florida, and thus, Plaintiff withdrew his own motion to transfer [Doc. # 21].

### B. Allegations Related to Disqualification Motion

In 2008, Fox represented LRP in a sex discrimination case, *O'Donnell v. LRP Publications, Inc.*, No. 2:08cv1560(AB) in the Eastern District of Pennsylvania. Ms. Rebecca McKenna, an employee at LRP who is "responsible for all advertising sales for LRP's magazine," was an important "point person" for the case. (Pl.'s Mem. Supp. [Doc. # 35–1] at 6; McKenna Decl. [Doc. # 35–2] ¶ 3.) Ms. McKenna states that she "worked very closely" with Mr. Ludwig, the Fox attorney assigned to the matter, for "approximately two years," including on discovery, determining which employees should meet with Fox lawyers and provide depositions. (McKenna Decl. ¶ 6.) Ms. McKenna further attests that Mr. Ludwig had

> direct access to any information necessary to handle [the employment discrimination] matter, including access to many of LRP's employees, including members of my staff, many of whom handled "damage control" resulting from SharedXpertise's false press release. Mr. Ludwig also had access to confidential information, which no competitor would ever have access to. During the life of the employment discrimination matter, Mr. Ludwig gained direct knowledge of details of LRP's sales strategy, including how we attract customers and sell advertising, conference space, online advertising and sponsorships; . . . and information regarding how LRP differentiates itself from competitors' publications, websites and conferences.

(*Id.* ¶ 7.) The employment discrimination case settled on May 5, 2010. (*Id.* ¶ 8.)

Ms. McKenna describes the issues in the present case as involving "direct competitors in the human resources industry," and that "SharedXpertise's April 1, 2011 false press release directly involved LRP's magazine and signature conference, both of which fall under my responsibilities." (*Id.* ¶ 10.)

3

Mr. Ludwig attests that the focus of the discovery in the O'Donnell employment discrimination case was on the plaintiff's "performance in selling pages in Human Resources Executive . . . Magazine during her employment during calendar years 2005 and 2006 and the first calendar quarter of 2007." (Ludwig Aff. [Doc. # 52–1] ¶ 7.) He further states that the "only issues in the case were why O'Donnell was terminated from employment in early February, 2007 and whether she was owed wages under Pennsylvania law," and, if so, whether she was entitled to compensatory and punitive damages. (*Id.*) He attests that SharedXpertise was not referenced at any of the depositions or in the pleadings (*id.*), and that the litigation did not involve the "sales, revenues, profits, finances, marketing or attendance at the HR Technology conference" (*id.* ¶ 8). Mr. Ludwig describes the information and documentation he received as relating "to the sale of magazine pages and the marketing of the HRE Magazine between 2004 and 2007 by sales representatives." (*Id.*) Mr. Ludwig also states that Mr. Kutik "is not and never has been a client of Fox Rothschild" (*id.* ¶ 6), and that

> [i]t is my understanding that, in an exercise of caution, an ethical screen has been created to prevent any contact with information secured from LRP Publications, Inc. in the O'Donnell Litigation from being accessed by anyone at Fox Rothschild LLP involved with the current litigation which pertains to subsequent events in another state.

(*Id.* ¶ 13.) Further, Defendant's attorneys, Robert Clothier and Amit Shah were "not involved in any manner in the O'Donnell litigation." (*Id.* ¶ 12.)

## II.   Discussion

The authority of federal courts to disqualify attorneys derives from their inherent power to "preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citing *Bd. of Educ. v. Nyquist*, 590

4

F.2d 1241, 1246 (2d Cir.1979)). In exercising this power, the Court must attempt to balance "a client's right freely to choose his counsel" against "the need to maintain the highest standards of the profession." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir.1978); *see also Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564-65 (2d Cir.1973).

Disqualification is disfavored in the Second Circuit and is only warranted in the rare circumstance where an attorney's conduct "poses a significant risk of trial taint." *Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936(KMW), 2011 WL 672254 (S.D.N.Y. Feb. 22, 2011); *see also Gleuck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) ("Recognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, we have indicated that such relief should ordinarily be granted only when a violation . . . poses a significant risk of trial taint."). Consequently, the moving party's burden of proof is a high one, *see Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791–92 (2d Cir. 1983), though the Second Circuit has admonished that "in the disqualification situation, any doubt should be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

The Second Circuit has been presented with two types of situations in which an attorney's misconduct will taint the trial sufficiently to require disqualification. *Nyquist*, 590 F.2d at 1246. The first is where a law firm concurrently represents parties with adverse interests and is inapplicable here. The second type—that of "successive representation"—arises where the attorney places him or herself in a position where that attorney could use in litigation against a former client relevant, privileged information

5

obtained during the prior representation. *Id.* Under these circumstances, disqualification is appropriate if

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans*, 715 F.2d at 791. Outside of these situations, courts "have shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct." *Nyquist*, 590 F.2d at 1246. That the representation may create an appearance of impropriety generally is insufficient on its own to merit disqualification. "[T]he appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." *Id.* at 1247. In a successive–representation situation, "conflicts are ordinarily imputed to [the] firm based on the presumption that 'associated' attorneys share client confidences." *Hempstead*, 409 F.3d at 135. The presumption of confidence sharing within a firm can be rebutted, and according to the Second Circuit there is "no categorical rule against considering practices and structures that protect client confidences within a firm in determining whether an attorney or firm should be disqualified." *Id.* at 137.

If the elements of the three–part *Evans* analysis are demonstrated, a court must balance three competing interests: (1) the client's interest in freely selecting counsel of its choice, (2) the adversary's interest in the trial free from the risk of even inadvertent disclosures of confidential information, and (3) the public's interest in the scrupulous administration of justice. *Hull*, 513 F.2d at 570.

1. Whether Kutik Is a "Former Client"

It is undisputed that Plaintiff was never a client of Fox. Plaintiff argues, however, that he should be considered a "vicarious client" based on Fox's prior representation of LRP during the O'Donnell lawsuit. Acknowledging that "[r]esearch reveals limited case law in this jurisdiction regarding vicarious client relationships" (Pl.'s Mem. Supp. at 9), Plaintiff points to one case from this district, *Colorpix Systems of Am. v. Broan Mfg. Co., Inc.*, 131 F. Supp. 2d 331 (D. Conn. 2001), a products liability action in which Judge Covello found a vicarious client relationship where Robinson & Cole, the plaintiff's counsel, had previously represented the defendant, one of several parent companies of the plaintiff, in similar products liability actions. In determining that the defendant had been a "vicarious client" of Robinson & Cole, the district court considered "the movant's relationship with the affiliate," 131 F. Supp. 2d at 336, whether the affiliated companies shared an "'identity of interest,' for example, whether the companies ha[d] substantially similar management personnel, share[d] the same corporate principles and business philosophy, and share[d] the services of one legal department." *Id.* at 337 (internal citations omitted). Because the court determined that Robinson & Cole's prior client's "general counsel has supervised [the defendant's] defense of the . . . cases," and the defendant had used the "shared legal department," Judge Covello concluded that Broan had provided sufficient evidence of an attorney–client relationship between Robinson & Cole and itself for the "limited purpose of triggering inquiry into the potential conflict" between Robinson & Cole's representation of the plaintiff in that case. *Id.*

Here, there is no such relationship between Mr. Kutik and LRP.[2] There are no shared legal departments and no shared "identity of interest," because Mr. Kutik's litigation against SharedXpertise would not have financial impact on LRP. *See id.* at 336 (citing *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 756 F. Supp. 789, 792 (S.D.N.Y. 1991) (counsel's duty of undivided loyalty to the parent required disqualification in its case against the subsidiary "because the liabilities of a subsidiary corporation directly affect the bottom line of the corporate parent"). Plaintiff also points to *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir. 1981), affirming the disqualification of the plaintiff's law firm because his counsel had previously represented the trade association of which the defendant was a member and the firm had met with defendant and discussed labor matters with them. *Id.*, 653 F.2d at 748.

The record shows that Mr. Kutik is a consultant with LRP, and though his relationship with LRP has spanned "almost 15 years" (Pl.'s Mem. Supp. at 10), the relationship between Mr. Kutik and LRP is not similar to the relationship between Broan and its parent companies in *Colorpix*, or of Mr. Glueck and his counsel's prior representation of the defendant's trade association in *Glueck*. Mr. Kutik does not allege that Fox was privy to any of *his* confidential information, and there has been no showing of a unity of interest between Mr. Kutik and LRP to justify a finding of a vicarious attorney–client relationship.

---

[2] Mr. Kutik argues that he and LRP share "outside counsel," but does not explain how his choice of outside counsel is functionally equivalent to two corporations sharing a legal department.

2. Substantial Relationship to the Subject Matter of Prior Representation

Even if Mr. Kutik's relationship with LRP could constitute a "vicarious client relationship" for the limited purposes of looking into the potential conflict between Kutik and Fox, Mr. Kutik must also show that there is a "substantial relationship" between Fox's representation of LRP in the *O'Donnell* employment discrimination matter and the matter at issue here. In considering whether there was a "substantial relationship," the Second Circuit has required a "patently clear" relationship between issues in the prior and present cases to warrant disqualification. *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739–40 (2d Cir. 1978). "Put more specifically, disqualification has been granted or approved recently only when the issues involved have been 'identical' or 'essentially the same.'" *Id.* (concluding that the "substantial relationship" prong was met where "[t]he very same information necessarily was the cornerstone upon which India's fraud claim against Cook in the instant case was based. It would be difficult to think of a closer nexus between issues.").

Plaintiff himself concedes that "this matter is not identical or essentially the same as the employment discrimination matter" but argues that because the confidential information gained from the prior representation is "relevant and useful in the present representation," disqualification is warranted. (Pl.'s Mem. Supp. at 15.) Plaintiff contends that Fox had "direct access" to LRP's employees, company records, and its sales records. Defendant disputes this contention, and Mr. Ludwig attests that the only information and documentation that he and Fox received from LRP "related to the sale of magazine pages and the marketing of the HRE Magazine between 2004 and 2007." (Ludwig Aff. ¶ 8.) Further, Plaintiff does not explain why these particular records, relevant to the dissimilar

9

*O'Donnell* case and from a time period several years prior to the release of the April Fool's Day press release, are "relevant and useful" for the present matter. Thus, the Court concludes that the relationship between the issues in the prior employment discrimination case and the present matter are not "substantially related" as required by the Second Circuit. Accordingly, as Mr. Kutik has not shown the disqualification is appropriate under the three–factor test in *Evans*, his motion must be denied.

III.    **Conclusion**

For the reasons discussed above, Plaintiff's motion [Doc. # 35] to disqualify defense counsel is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of November, 2012.