UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM M. KUTIK | : |
| Plaintiff, | : Civil Action No. 3:11-CV-00605-MPS |
| v. | : |
| SHAREDXPERTISE MEDIA, LLC, | : |
| Defendant. | : |

**DECLARATION OF WILLIAM M. KUTIK IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

I, William M. Kutik, hereby declare as follows:

1. I am over 21 years of age and am competent to make this declaration. I submit this declaration based upon my personal knowledge. If called as a witness, I could and would testify competently to the matters described herein.

2. I am a Connecticut resident and sole proprietor of Kutik Communications. For more than 23 years, I have been a consultant relating to, and industry analyst of, software used in corporate Human Resources. I have as many as 20 clients a year.

3. My financial arrangements with and income received from any of my clients is highly personal and confidential, and something I would never share with anyone other than my family, attorneys, and accountants. I take precautions to maintain the confidentiality of this information, and I keep the documents on a password-protected computer and in a locked file cabinet.

4. In addition, given the number of clients I have, the financial terms and conditions of my engagement with any of my clients is a closely held trade secret and confidential business information, necessary for my continuing to conduct business and to continue to conduct favorable

negotiations for further work. If my compensation were disclosed, it would stifle my ability to negotiate at arms-length with clients and potential clients and set my pricing as favorably as I can. In addition, if SharedXpertise were to have my compensation information with LRP, it would harm any ability I might have to negotiate with SharedXpertise in the future (as I have in the past).

5. Revealing my financial arrangements to anyone would be severely damaging to my continuing business. This is of especially great concern with regard to the Defendant in this action, Elliot Clark of SharedXpertise, who has been waging a personal vendetta against me for three years.

6. For the last 10 years, my largest client has been LRP Publications, where I act as co-chair of its HR Technology® Conference, which is LRP's signature conference and the world's largest human resource conference focused on technology. I am personally responsible for growing the conference and making it very financially successful during that time. A portion of my compensation from LRP is based on the revenue that LRP receives from vendors and attendees at the conference.

7. Regarding this case, SharedXpertise's April 1, 2011 false press release directly involved my role as a consultant with LRP as Conference Co-Chair of LRP's HR Technology® Conference. SharedXpertise's false press release, which was sent out to approximately 33,400 people in the human resources professional community, falsely claimed that I would be retiring from the human resources business. On April 1, 2011 or any time prior to that, I was not retiring from or considering retiring from the human resources business. I never spoke with anyone from SharedXpertise or anyone else about my desire or intention to leave the human resources business because that was not something that I was considering. I did not consent to SharedXpertise's use of my name or information linked to me in their false press release. I continue to work as a consultant with LRP and as Conference Co-Chair of LRP's HR Technology® Conference.

8. Seeing my success, Mr. Clark approached me in 2009 with an offer to abandon LRP as a client and run a conference for him that would compete directly with the HR Technology® Conference. Not being under contract with LRP at that time, I negotiated with him, always expressing my reluctance to leave a guaranteed success, and together we agreed on final terms of a possible partnership.

9. Ultimately I decided to reject his final offer and stay with LRP. Mr. Clark then became furious, and then launched an ongoing campaign over the last three years to damage me in the HR technology marketplace (where I live and work) and undercut my relationship with LRP and its owner, Ken Kahn. Mr. Clark continues to this day to carry enormous personal animosity toward me.

10. His first effort was to feature me in his magazine HRO Today, printing a large picture of me and write-up of my industry activities. Since that magazine focuses on HR outsourcing, an area I give very little attention to, I did not understand the reason for Mr. Clark's actions. However, Mr. Clark later admitted to me in a conversation that his intention was to undermine my relationship with Mr. Kahn -- who would wonder why I was being honored by his competitor – and cause Mr. Kahn to doubt my loyalty to LRP. This was the first of Mr. Clark's attempts to embarrass me with LRP and hurt my relationship with LRP.

11. The second effort was much more pointed. I had told Mr. Clark that I had signed a very strict non-compete agreement with LRP. Knowing that, Mr. Clark sent Mr. Kahn an e-mail supposedly "thanking" me for my "invaluable help and guidance" in helping him organize his latest show and attributing part of its success to me. This email was a complete fabrication. I did not do any work whatsoever in connection with Mr. Clark's business, and any such work would have

3

violated my non-compete agreement with LRP. Here again, Mr. Clark's sole purpose was to falsely suggest to LRP that I had breached my agreement and to damage my relationship with LRP.

12. Mr. Clark actually sent the e-mail to me in advance, and I warned him strongly not to send the email. But Mr. Clark sent it to Mr. Kahn anyway. Mr. Kahn told me later that his initial thought after reading it was to contact his lawyers to take action against me, but, fortunately for me, he then realized it was a manipulation by Mr. Clark.

13. This current lawsuit arises from Mr. Clark's third effort to damage me – this time with the false and damaging press release issued on April 1, 2011 that is the basis of this action. In this press release, which was sent out to approximately 33,400 people in the HR professional community, Mr. Clark falsely stated that he had acquired LRP and that I was going to "focus on [my] new business managing a clinic for sensitivity training and smoking cessation in the Catskill Mountain region of New York" (Mr. Clark knows that I am Jewish). The press release then went on to include a fabricated quotation attributed to me about wanting to "help people because that is what I love and what makes me happy" and that I wanted everyone in the HR community to "just be together as people." I have no doubt that Mr. Clark's purpose in issuing this press release was to embarrass and humiliate me in the marketplace.

14. This false press release fits perfectly into the pattern of Mr. Clark's continuing campaign to damage my business and me professionally. The false press release was not some sort of innocent "joke," as I understand Mr. Clark now contends, but a deliberate effort to injure both me and LRP. Mr. Clark's prior efforts to damage me were likewise no "joke."

15. With all this as background, I am extremely concerned as to what Mr. Clark would do with my confidential financial information, and that he would use it to continue his vendetta against me.

16.     I believe Mr. Clark could -- and would -- use this information, out of context, to paint a distorted picture of the way I am compensated (both directly and through my deferred compensation package, and how it differs from my past compensation package with LRP) in a way that will cause great damage to my relationships with exhibitors at the HR Technology® Conference, who are and have been my clients separate from the conference, as well as other clients and potential clients.

17.     In addition to my consulting agreement with LRP, I have a separate agreement that is referred to as a "Rabbi Trust." In the consulting agreement, I am compensated based in part on the financial success of the HR Technology® Conference. Pursuant to the agreement regarding the Rabbi Trust, I am compensated only for recruiting and training a successor. This compensation is not based in any part on the financial success of the conference. Therefore, I seek to redact the financial information in the Rabbi Trust document (and other documents that relate to them). Not only is this information personal and confidential, it has absolutely no bearing on this lawsuit, in which I seek damages based on diminished income from the HR Technology® Conference due to people who may have not attended due to the false press release.

18.     I am stepping down from an active role in the HR Technology® Conference after it concludes on October 9, 2013. But I will continue to do business with all the companies who have exhibited and sponsored there. They represent my community, and as in any community – business or residential – someone's reputation is key.

19.     Thus, disclosing my confidential financial information to a direct competitor who has a personal vendetta against me would damage my business and my livelihood. I therefore respectfully request that to the extent my highly confidential financial arrangements with LRP are relevant to this litigation at all, that they be produced on an attorneys-eyes-only basis, and that my

attorneys be permitted to redact highly confidential financial information that has no bearing on any of the issues here.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: February 15, 2013

_____
William M. Kutik

6

## CERTIFICATION OF SERVICE

I hereby certify that on February 15, 2013, a copy of the foregoing Declaration of William M. Kutik was filed electronically.

Notice of the foregoing filing and this Certification of Service will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to any parties who are unable to accept electronic filing.

Parties may access the foregoing filings and this Certification of Service through the Court's system.

/s/ Stuart M. Katz
Stuart M. Katz, Esq.