UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM M. KUTIK, <br><br> Plaintiff, <br><br> v. <br><br> SHAREDXPERTISE MEDIA, LLC, <br><br> Defendant. | Civil Action No. 3:11-CV-00605-MPS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF WILLIAM M. KUTIK'S MOTION FOR AN "ATTORNEYS' EYES ONLY" PROTECTIVE ORDER**

                                      COHEN AND WOLF, P.C.
                                      1115 Broad Street
                                      P.O. Box 1821
                                      Bridgeport, CT 06601
                                      Telephone: (203) 337-4144
                                      Facsimile: (203) 394-9901

*Of Counsel:*

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

Plaintiff William M. Kutik ("Mr. Kutik") respectfully submits this Memorandum of Law in support of his motion for entry of a protective order (i) limiting the disclosure of Mr. Kutik's highly proprietary and commercially sensitive information to outside counsel and experts only (an "Attorneys' Eyes Only" order) and (ii) sustaining Mr. Kutik's redaction of the dollar amount of certain future compensation Mr. Kutik is entitled to under a "Rabbi Trust" agreement with LRP, which is not relevant to the calculation of damages or any other issue in the case.

## PRELIMINARY STATEMENT

Good cause exists for the issuance of an "Attorneys' Eyes Only" protective order regarding the documents at issue. Mr. Kutik seeks this necessary protective order to protect against the disclosure of his proprietary and commercially sensitive information – consulting and related agreements and compensation information – to SharedXpertise Media LLC's ("SharedXpertise") owner and Chief Executive Officer, Elliot Clark, and other SharedXpertise executives and employees.

Mr. Kutik, a Connecticut resident, is a consultant to LRP Publications, Inc. ("LRP").[1] Since its inception almost 15 years ago, Mr. Kutik has been the Co-Chair and programmer of LRP's annual HR Technology Conference & Exposition ("LRP's Expo"), which is the world's largest human resources conference focused on technology.[2] LRP and SharedXpertise are direct competitors in the human resources industry.[3]

---

[1] Declaration of William M. Kutik in Support of Plaintiff William M. Kutik's Motion for an "Attorneys' Eyes Only" Protective Order, dated February 15, 2013 ("Kutik Decl.") ¶¶ 2; 6 (filed contemporaneously herewith).
[2] Kutik Decl. ¶ 6.
[3] Compl. ¶ 6; Answer ¶ 6.

SharedXpertise hosts HR Today Forum and The HR Demo Show, which directly compete with LRP's Expo.[4]

This action arises from a false and disparaging press release issued by SharedXpertise on April 1, 2011, which was sent out to approximately 33,400 people in the human resources professional community.[5] The press release falsely stated that it had acquired LRP's Human Resource Executive Magazine and LRP's Expo, and falsely claimed that Mr. Kutik would have no further connection with the LRP Expo and was retiring from the human resources business.[6] The false press release also contained a fictitious quote attributed to Mr. Kutik, in which he supposedly acknowledged his retirement.[7] The false press release was part of an ongoing pattern of malicious conduct by SharedXpertise and its owner for the purpose of damaging both Mr. Kutik and LRP.[8] LRP has commenced an action against SharedXpertise in Florida seeking damages resulting from the false press release, and Mr. Kutik has commenced the present action.

The false press release was purposely timed to interfere with LRP's solicitation of vendors and participants in the LRP Expo, to be held in October 2011. A portion of Mr. Kutik's compensation under his consulting agreement with LRP is based on the gross revenue LRP receives from vendors and attendees at LRP's Expo.[9] Mr. Kutik's measure of economic loss in this case is the diminution of revenue that he received under that consulting agreement.

---

[4] Compl. ¶ 8; Answer ¶ 8.
[5] Kutik Decl. ¶ 7.
[6] Compl. ¶¶ 9-13; Kutik Decl. ¶ 7.
[7] Compl. ¶¶ 9-13; Kutik Decl. ¶ 7.
[8] Kutik Decl. ¶¶ 8-14.
[9] Kutik Decl. ¶ 6.

In connection with discovery in this action, Mr. Kutik has provided his agreements with LRP, the terms of which are highly confidential and proprietary. Disclosure of Mr. Kutik's consulting agreements and compensation information to SharedXpertise executives and employees, including its owner and Chief Executive Officer, Mr. Clark, would cause serious injury to Mr. Kutik.  It is unnecessary for SharedXpertise executives and employees, including Mr. Clark, to have access to Mr. Kutik's consulting agreements and compensation information because SharedXpertise's outside counsel and experts can sufficiently review and analyze these documents for SharedXpertise's defense of this action.

An "Attorneys' Eyes Only" protective order will place a reasonable limit on the use of Mr. Kutik's proprietary and commercially sensitive information in this action. SharedXpertise will in no way be inhibited from further developing its litigation strategy and Mr. Kutik will be protected from the risk of disclosure of his contract and compensation information to his competitor.

Indeed, SharedXpertise previously sought an "Attorneys' Eyes Only" protective order for their commercial information (Dkt. # 34), which was granted by Magistrate Margolis.  (Dkt. # 65).

Mr. Kutik's agreements with LRP also provide that he is entitled to certain future tax-deferred compensation in return for recruiting and training a successor.  This compensation is not based in any part on the financial success of the LRP Expo and therefore has no bearing on the calculation of damages.[10]  Mr. Kutik has produced the agreements relating to these services, including documents relating to the creation of a "Rabbi Trust" into which this tax deferred compensation will be paid, but has redacted

---

[10] Kutik Decl. ¶ 17.

the dollar amounts of the tax-deferred future compensation. These dollar amounts are particularly sensitive and are irrelevant to the calculation of damages or any other issue in the litigation. Mr. Kutik should not be required to disclose this information even on an "Attorneys Eyes Only" basis.

### STATEMENT OF FACTS

On April 19, 2011, Mr. Kutik filed the instant action against SharedXpertise for unfair competition under the Lanham Act, violation of rights of publicity under Connecticut state law, and violation of the Connecticut Unfair Trade Practices Act. This Court subsequently issued its Standing Protective Order (Dkt. # 4), which allows counsel to designate as "Confidential" any document or information within a document that it produces during discovery as necessary to protect the interests of the client. The Standing Protective Order does not provide for a heightened level of confidentiality, such as "Attorneys' Eyes Only."

On January, 17, 2012, SharedXpertise served Defendant SharedXpertise Media, LLC's First Request for Production of Documents, Electronically Stored Information and Things to Plaintiff William Kutik ("SharedXpertise's Requests") on Mr. Kutik. SharedXpertise's Requests relevant to this Motion read as follows:

> Document Request No. 2: All documents, electronically stored information and things that constitute, reflect, refer to, or mention any contract or other arrangement between Kutik and LRP covering the years 2009, 2010 or 2011.
>
> Document Request No. 10: All documents, electronically stored information and things that constitute, reflect, refer to, mention or identify the amount of money earned by Kutik from the HR Technology Conference & Exposition in any of the years 2009, 2010 or 2011.
>
> Document Request No. 11: All documents, electronically stored information and things that constitute, reflect, refer to, or mention any contract or other

5

arrangement pursuant to which Kutik earned any income or other compensation in any of the years 2009, 2010 or 2011.

On January 24, 2013, Mr. Kutik's counsel produced documents responsive to SharedXpertise's Requests, including 1) Mr. Kutik's 2009, 2010, and 2011 income tax 1099 forms from LRP[11]; 2) Mr. Kutik's 2010 Consulting Agreement with LRP; 3) Mr. Kutik's 2010-2020 Consulting Agreement with LRP; and 4) Mr. Kutik's "Rabbi Trust" Agreement with LRP (the produced documents collectively, Mr. Kutik's "consulting agreements and compensation information").[12]

Mr. Kutik's consulting agreements and compensation information were produced to SharedXpertise's counsel on a "Highly Confidential – Attorneys' Eyes Only" basis.[13] Mr. Kutik's "Rabbi Trust" Agreement with LRP was also produced containing redactions of irrelevant and highly confidential financial information.

On February 6, 2013, SharedXpertise's counsel indicated that SharedXpertise would not accept any of the documents on such a basis.[14]  As a result, Mr. Kutik respectfully requests that this Court enter an "Attorneys' Eyes Only" protective order and an order permitting Mr. Kutik to maintain the redactions described above.

## ARGUMENT

**I.    Good Cause Exists to Issue an "Attorneys' Eyes Only" Protective Order**

Courts are given "broad discretion regarding whether to issue a protective order." *Wells Fargo Bank, N.A. v. Konover*, 2009 WL 585434, at *4 (D. Conn. Mar. 4, 2009)

---

[11] The redactions of Mr. Kutik's Social Security number on his 1099 forms are not at issue.
[12] Declaration of Jenifer deWolf Paine in Support of Plaintiff William M. Kutik's Motion for an "Attorneys' Eyes Only" Protective Order, dated February 15, 2013 ("deWolf Paine Decl.") ¶ 3 (filed contemporaneously herewith).
[13] deWolf Paine Decl. ¶ 4.
[14] deWolf Paine Decl. ¶ 5.

6

(citing *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992). For good cause shown, a court "may enter an order 'that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way.'" *Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 56 (D. Conn. 2004) (citing Fed. R. Civ. P. 26(c)(1)(G)). "Good cause is established by demonstrating a clearly defined and serious injury resulting from disclosure." *Hanson v. U.S. Airports Air Cargo, LLC*, 2008 WL 4426909, at *1 (D. Conn. Sept. 26, 2008). Good cause exists for this Court to issue an "Attorneys' Eyes Only" protective order because SharedXpertise's Requests seek highly confidential and sensitive proprietary and commercial information in the form of Mr. Kutik's consulting agreements and compensation information. *See* Fed. R. Civ. P. 26(c)(1)(G) (The court may issue an order requiring that "commercial information . . . be revealed only in a designated way."). Disclosure of such documents without "Attorneys' Eyes Only" protection will seriously injure Mr. Kutik because it will hinder his ability to negotiate fair, arms-length contracts in the future.

**II.     Mr. Kutik's Consulting Agreements and Compensation Information Are Commercial Information Deserving of Disclosure on an "Attorneys' Eyes Only" Basis**

"Pricing and marketing information are widely held to be confidential business information that may be subject to a protective order." *Uniroyal Chem. Co. Inc. v. Syngenta Crop. Prot.*, 224 F.R.D. 53, 57 (D. Conn. 2004). Mr. Kutik is the sole proprietor of Kutik Communications, which is a business he has run for more than 23 years.[15] Mr. Kutik negotiates with and sells his services to as many as 20 companies per

---

[15] Kutik Decl. ¶ 2.

year.[16] LRP is one of the companies that Mr. Kutik has negotiated with and sells his services to. LRP has been Mr. Kutik's largest client for the last 10 years.[17] Given that he negotiates with and sells his services to so many companies, Mr. Kutik keeps all of his contract terms and compensation (*i.e.*, pricing) private and would never share this information with anyone other than his family, attorneys, and accountants.[18] This allows Mr. Kutik to negotiate at arms-length, which leads to agreements on fair contract and compensation terms with each of the companies that he works with.

Other factors are important in determining "[w]hether information merits protection in a case" and such factors are "1) the extent to which the information is known outside the business; 2) the extent to which information is known to those inside the business; 3) the measures taken to guard the secrecy of the information; and 4) the value of the information to the business and its competitors." *Id.* at 56. Mr. Kutik does not share his consulting agreements and compensation information with anyone, whether they are inside or outside the business. Mr. Kutik uses reasonable measures to protect the privacy of the information by storing paper versions in a locked filing cabinet and electronic versions on a password-protected computer.[19]

Mr. Kutik will be irreparably harmed by disclosure to SharedXpertise executives and employees, including its owner and Chief Executive Officer, Mr. Clark. Disclosing Mr. Kutik's consulting agreements and compensation information in that manner would stifle his position in the marketplace. He will no longer be able to negotiate at arms-length in the marketplace and set his pricing as favorably as he can based on several

---

[16] Kutik Decl. ¶ 2.
[17] Kutik Decl. ¶ 6.
[18] Kutik Decl. ¶ 3.
[19] Kutik Decl. ¶ 3.

factors, including the company he is negotiating with.[20]  Mr. Kutik previously negotiated possible employment with Mr. Clark for a role with SharedXpertise.[21]  Disclosing Mr. Kutik's consulting agreements and compensation information would harm any ability he might have to negotiate with SharedXpertise in the future (as he has done in the past).[22]

Further, SharedXpertise could – and would – use the information regarding Mr. Kutik's consulting agreements and compensation if it is revealed.[23]  Previously, SharedXpertise's owner and Chief Executive Officer, Mr. Clark repeatedly has attempted to tarnish Mr. Kutik's reputation within the industry.[24]  First, Mr. Clark featured Mr. Kutik in SharedXpertise's magazine although there was no legitimate reason for doing so, and later admitted to Mr. Kutik that his intention was to undermine Mr. Kutik's relationship with LRP's President, Kenneth Kahn – who would wonder why Mr. Kutik was being honored by his competitor – and cause Mr. Kahn to doubt Mr. Kutik's loyalty to LRP.[25]

Second, based on his previous negotiations with Mr. Kutik, Mr. Clark was aware that Mr. Kutik had signed a very strict non-compete agreement with LRP.  Mr. Clark then sent Mr. Kahn an e-mail supposedly "thanking" Mr. Kutik for his "invaluable help and guidance" in helping to organize Mr. Clark's latest show.  Mr. Clark's email was a complete fabrication because Mr. Kutik did not do any work in connection with Mr. Clark's business, recognizing that to do so would have violated Mr. Kutik's non-compete

---

[20] Kutik Decl. ¶ 4.
[21] Kutik Decl. ¶¶ 4; 8-9.
[22] Kutik Decl. ¶ 4.
[23] Kutik Decl. ¶¶ 15-16.
[24] Kutik Decl. ¶¶ 8-14.
[25] Kutik Decl. ¶ 10.

agreement with LRP. Mr. Clark's sole purpose was to falsely suggest that Mr. Kutik had breached his agreement with LRP and thus damage Mr. Kutik's relationship with LRP.[26]

Finally, Mr. Clark made efforts to embarrass, humiliate, and damage Mr. Kutik in the marketplace by authorizing the issuance of the false press release at the heart of this matter.[27] Without "Attorneys' Eyes Only" protection for Mr. Kutik's consulting agreements and compensation information, SharedXpertise, and Elliot Clark more specifically, will use it to seriously injure Mr. Kutik by painting a distorted picture in the industry of how Mr. Kutik is compensated. This will cause great damage to Mr. Kutik's relationships with exhibitors at LRP's Expo and with other clients and potential clients.[28]

In *A Major Difference, Inc. v. Wellspring Products, LLC*, the court granted an attorneys' eyes only protective order where the plaintiff intended to show defendant's confidential financial information to its corporate representative. 243 F.R.D. 415 (D. Colo. 2006). "The issue is whether the corporate representative of one company may review proprietary and confidential financial information of a direct competitor or whether the disclosure of confidential and proprietary information should be restricted to the attorneys for each party and to any outside experts or other outside persons who are necessary for the litigation of the action." *Id.* at 417. The court found that an "Attorneys' Eyes Only" protective order was necessary to protect the movant from the potential harm resulting from disclosure of confidential financial information. Here, as discussed above, disclosure of Mr. Kutik's confidential financial information (*i.e.*, his consulting agreements and compensation information) without an "Attorneys' Eyes Only" protective order will lead to irreparable harm.

---

[26] Kutik Decl. ¶¶ 11-12.
[27] Kutik Decl. ¶¶ 13-14.
[28] Kutik Decl. ¶¶ 15-16.

Courts have a duty to balance the interests of the party seeking to obtain information against the interests of the party seeking to keep the information confidential. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) ("While Rule 26(c) articulates a single standard for ruling on a protective order motion, that of 'good cause,' the federal courts have superimposed a somewhat more demanding balancing of interests approach to the Rule."). Mr. Kutik's interest in not being irreparably harmed by disclosure of his highly confidential, and sensitive, consulting agreements and compensation information outweighs any need that SharedXpertise has to share such information with its executives and employees, including Mr. Clark. SharedXpertise's outside counsel and experts can sufficiently review and analyze these documents for SharedXpertise's defense of this action. *See Gaymar Indus. v. Cloud Nine, LLC*, 2007 WL 582948, at *3 (D. Utah 2007) ("[F]inancial data must be protected from unnecessary disclosure. . . . Plaintiff claims that its principals need access to the . . . financial information because they have expertise in the filed-but as is typical in cases between competitors and alleged infringers, retained experts who are obligated to maintain confidences will have to provide this assistance.").

Moreover, SharedXpertise sought an "Attorneys' Eyes Only" protective order for its commercial information (Dkt. # 34), which was granted by Magistrate Margolis. (Dkt. # 65).

### III. The Redacted Information Is Generally Irrelevant to This Action and Specifically Irrelevant to SharedXpertise's Requests

In his document production of January 24, 2013, Mr. Kutik redacted the dollar amount of future deferred compensation that he would be paid under a "Rabbi Trust" agreement with LRP in return for recruiting and training a successor to manage the LRP

11

Expo.[29]  This redacted information is highly confidential and is not relevant to any issue in the case.  In particular, the redacted information is unrelated to the revenue that LRP derived from the conference in 2011, any diminution in LRP's revenue resulting from the false press release, or any calculation of Mr. Kutik's damages.[30]  There is no basis for requiring Mr. Kutik to produce this highly confidential financial information, and these redactions should be upheld.

Mr. Kutik's economic loss here is measured by the reduction in the revenue he received under his consulting agreement with LRP, which is based on the gross revenue LRP receives from vendors and attendees at LRP's Expo.[31]  SharedXpertise's counsel and any experts can review Mr. Kutik's consulting agreements and income tax 1099 forms from LRP to determine his revenue and damages.  The separate future compensation for separate services – unrelated to his co-chairing and programming of LRP's Expo – in connection with the "Rabbi Trust" agreement is irrelevant to any damages calculation because it is not tied to the gross revenue LRP receives from vendors and attendees at LRP's Expo.  Therefore, the terms and financials should not be revealed to SharedXpertise, its counsel, or anyone else and should remain redacted.

## IV.   Conclusion

For the foregoing reasons, Mr. Kutik respectfully requests that this Court issue an "Attorneys' Eyes Only" protective order limiting the disclosure of Mr. Kutik's proprietary and commercially sensitive consulting agreements and compensation information to outside counsel and experts only and an order permitting Mr. Kutik to

---

[29] In general, a "rabbi's trust" provides a mechanism approved by the IRS for deferring taxes on future compensation that is paid into the trust, instead of being paid directly to the employee.  *See* Rev. Proc. 92-64, 1992-2 C.B. 422.
[30] Kutik Decl. ¶ 17.
[31] Kutik Decl. ¶ 6.

maintain his redaction of the dollar amount of future deferred compensation to be paid under the "Rabbi Trust" agreement.

Dated: February 15, 2013                Respectfully Submitted:

COHEN AND WOLF, P.C.

    /s/ Stuart M. Katz
Stewart I. Edelstein (ct06021)
Stuart M. Katz (ct12088)
sedelstein@cohenandwolf.com
skatz@cohenandwolf.com
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06601
Telephone: (203) 337-4144
Facsimile: (203) 394-9901

*Attorneys for Plaintiff William M. Kutik*

*Of Counsel:*

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

## **CERTIFICATION OF SERVICE**

I hereby certify that on February 15, 2013, a copy of the foregoing was filed electronically.

Notice of the foregoing filing and this Certification of Service will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to any parties who are unable to accept electronic filing.

Parties may access the foregoing filings and this Certification of Service through the Court's system.

                                              /s/ Stuart M. Katz
                                              Stuart M. Katz, Esq.